# Exhibit 2

DocuSign Envelope ID: 44BE5BEC-7294-4ADB-9F76-730497CB5EDE

# NEW YORK STATE
# MEDICAID TRANSPORTATION PROGRAM
# TRANSPORTATION PROVIDER NETWORK CONTRACT

This New York State Medicaid Transportation Program Transportation Provider Network Contract (the "Contract") is entered into on the  5   day of ___December___, 20 23 , by and between   Absolute 1 Transport LLC_____ ("Provider") and Medical Answering Services, LLC ("MAS"), each a "Party" and collectively the "Parties" to this Contract, which shall be effective when executed by MAS as provided herein (the "Effective Date").

## PURPOSE

The New York State Department of Health ("NYSDOH") has designated MAS as a broker manager of its Medicaid transportation program and has charged MAS with establishing and managing a Medicaid transportation provider network for the delivery of Medicaid Non-Emergency Medical Transportation ("NEMT") services in New York State (the "MAS Network"). In its capacity as a broker of NEMT services, MAS will (i) receive transportation requests from or on behalf of persons enrolled in the New York State Medicaid Program ("Enrollees") seeking to receive NEMT services, or their agents,(ii) verify Enrollee eligibility, (iii) assign trips to eligible transportation providers, (iv) submit trip requests to transportation providers, and (v) perform such other administrative functions as MAS deems necessary to meet the requirements of the NYSDOH and to arrange quality transportation for Enrollees.

Notwithstanding anything herein to the contrary, MAS shall be under no obligation to assign a specific number of transportation requests to Provider.  Any trip request assigned to Provider may be withdrawn by MAS, in its sole discretion, in the event that MAS deems it necessary for the proper performance of its obligations under its agreement with NYSDOH or as requested by or on behalf of an Enrollee.

**At no time will Provider bill an Enrollee or MAS for trip payment; all such payment requests shall be submitted to eMedNY.**

This Contract delineates the responsibilities of MAS and Provider associated with the compliance processes detailed in the New York State Medicaid Transportation Policy Manual ("NYS Manual") and MAS Transportation Provider Manual ("MAS Manual").  Provider must adhere to all provisions of the NYS and MAS Manuals at all times. Violation of the provisions set forth in either Manual could result in Provider's suspension from the MAS Network. These Manuals may be updated from time to time by New York State or MAS; it is Provider's responsibility to be in compliance with all provisions and changes in these Manuals at all times. Provider is strongly encouraged to regularly review the Manuals to ensure ongoing compliance with their provisions.

Execution of this Contract is a precondition and requirement for Provider to participate in the MAS Network.

1

## PARTIES

**Medical Answering Services, LLC**          **Provider:** Absolute 1 Transport LLC

P,O. Box 12000                                 Address:  407 Ontario Ave, Syracuse, NY, 13209
Syracuse, NY XXXXX13218
Attention: TP Contract Administration          Contact Name: Robert Kendrick
TPRelations@medanswering.com

                                               EIN or SSN:  86-3200831

                                               Phone #: 315-952-7145

## GENERAL PROVISIONS

1.  Term of Contract.  The term of this Contract shall be for a period of one (1) year from the Effective Date.  The Contract shall automatically renew for additional one-year terms unless terminated by either Party in accordance with the provisions of this Contract.

2.  Assignment.  Provider shall not sell, transfer, assign or dispose of this Contract, in whole or in part, or any of its rights or obligations hereunder, to any other party without first obtaining the express written consent of MAS in the exercise of its sole discretion.

3.  Modifications.  Any change to this Contract will be effective only when set forth in writing and signed by an authorized representative of each Party.

4.  Provider agrees to the terms and conditions set forth in the NYS and MAS Manuals, which is incorporated herein by reference, as same may be amended from time to time according to the provisions set forth therein.  A link to the NYS Manual can be found in Section 11.1.2.  The MAS Manual can be found in the Reports and References section of the Transportation Provider Portal in the MAS System, under the Education Center tab.

5.  Provider agrees to be bound by the terms, conditions and rates set forth in the Rate Schedule, as same may be amended from time to time.  The Rate Schedule can be found in the NYS Manual (see Section 11.1.2 for a link to the NYS Manual).

6.  Simultaneously with the execution of this Contract, Provider agrees to execute a Business Associate Contract,  in the form attached hereto as Exhibit A.

7.  In the event Provider employs the services of a vendor to assist Provider with performing its obligations under this Contract, Provider shall execute a business associate agreement with such vendor.  Provider must submit the executed vendor business associate agreement to MAS before the vendor will be permitted to access the MAS Medicaid transportation management system (the "MAS System").  "Vendor," for purposes of this paragraph, shall mean any person or entity that may encounter Personal Health Information in the performance of its services on behalf of Vendor.

## SCOPE OF WORK

8.  Provider shall provide NEMT services to Enrollees as prior authorized by MAS.

2

9. Provider shall provide NEMT services to Enrollees and their escorts, attendants and assistants as requested by MAS in a manner to ensure the safety of all passengers. All transportation shall be performed in accordance with the terms of this Contract, the MAS Manual and the NYS Manual, and are incorporated herein by reference and are a part of this Contract.

10. Orientation and Onboarding

Upon contracting with MAS (if applicable), Provider will be required to attend, and be responsible for attending, in person or via webinar, a virtual orientation of the MAS System.

11. Certifications.

11.1. To participate in the New York State Medicaid Program, a Provider must meet all applicable Federal, State, County and Municipal requirements for legal operation (including local Taxi and Limousine Commission licensure and Transportation Network Company's ("TNC") requirements, where applicable) and be fully compliant with the policies set forth in the NYS Manual.

11.1.1. In order to participate in the New York State Medicaid Program, transportation providers must be enrolled as a New York State Medicaid Service Provider. https://www.emedny.org/info/ProviderEnrollment.

11.1.2. The NYS Manual is located at: https://www.emedny.org/ProviderManuals/Transportation/index.aspx

11.2. Credentialing, Certification and Qualifications for the following modalities are located as indicated:

11.2.1. Qualifications of Ambulance Providers – Category of Service 0601 http://nyhealth.gov/nysdoh/ems/main.htm

11.2.2. Qualifications of Ambulette Providers – Category of Service 0602 https://www.dot.ny.gov/divisions/operating/osss/bus-repository/busregs1.pdf http://dmv.ny.gov/org/motor-carriers/information-and-forms-article-19

11.2.3. Qualifications of Taxi (Category of Service 0603) and NYC Livery (Category of Service 0605)

https://www.emedny.org/ProviderManuals/Transportation/index.aspx

12. Provider may not subcontract transportation services.

13. Insurance. Provider shall maintain the following coverage levels throughout the term of this Contract and submit proper evidence of insurance compliance to Medical Answering Services LLC:

3

The required amount of insurance is the greater of that required by local, county or state ordinance or Commercial Auto Liability insurance covering liability arising out of the use of any motor vehicle in connection with the services to be provided by Provider under this Contract, including owned, leased, hired and non-owned vehicles bearing or, under the circumstances under which they are being used, required by the Motor Vehicle Laws of the State of New York to bear, license plates. Such a policy shall have a combined single limit for Bodily Injury and Property Damage equal to or greater than the coverage amounts of existing policies in place as of November 5th, 2023.

Comprehensive General Liability-
Equal to or greater than the coverage amounts of existing policies in place as of November 5th, 2023

Worker's Compensation Insurance –
As required by the State of New York.

Disability Benefits Coverage –
As required by the State of New York.

All insurance coverage except Worker's Compensation and Disability, shall name Medical Answering Services, LLC and the New York State Department of Health as "additional Insureds" and shall be primary with respect to claims, shall hold both Medical Answering Services, LLC and New York State Department of Health harmless, and shall provide MAS and the New York State Department of Health a Waiver of Subrogation.

Certificates of Insurance/Notices
Policies must indicate that the policy will not be canceled, materially changed, or not renewed without at least 30 days prior written notice except for non-payment as required by law to Medical Answering Services LLC.

Addresses of Record for:

Medical Answering Services

New York State Department of Health

Medical Answering Services, LLC
PO Box 12000
Syracuse, NY 13218

New York State Department of Health
Empire State Plaza
Corning Tower-Room 1315
Albany NY 12237

Certificates of Insurance shall:
1) Be in a standard and customary form for the coverage.
2) Include the Transportation Provider ID number in either the Named Insured box or in the Description of Operations.
3) Disclose any deductible, self-insured retention, aggregate limit or any exclusion to the policy that materially changes the coverage required by this Contract.
4) Specify the Additional Insureds as required herein.
5) Be signed by an authorized representative of the insurance carrier or producer.

4

6) Only original documents (Certificates of Insurance, Supplemental Insurance Certificates, and other attachments) will be accepted.

7) Electronic forms will be accepted as original documents, provided the subject electronic document can be directly traced back to the insurance carrier, agent, or broker via email distribution or similar means.

14. Provider agrees to be bound by the mandatory terms and conditions applicable to Provider that are contained in the contract between MAS and NYSDOH.

15. Provider hereby warrants and agrees that neither it, nor any of its principals, employees, or agents, including drivers, is on any Federal Exclusions List or otherwise presently debarred, suspended, proposed for debarment or declared ineligible for award of contracts by any State or Federal agency. Provider agrees to provide evidence of the foregoing immediately upon request by MAS.  Provider agrees that it will not employ or contract with any person on any Federal Exclusion List or who is otherwise presently debarred, suspended, proposed for debarment or declared ineligible for award of contracts by any State or Federal agency.

16. Provider is subject to MAS's compliance program.  Provider will read and acknowledge MAS's compliance program upon signature of this agreement and annually thereafter. Failure to adhere to MAS's compliance program requirements can result in Provider's participation in the MAS Network to be suspended or terminated

17. Provider represents and warrants that it is and will continue to be knowledgeable of and responsible to meet all federal, local, and state requirements applicable to Provider's business and the provision of NEMT services. Participation in the MAS Network does not excuse or exempt Provider from complying with all applicable federal, state and local regulations. If found not to be in compliance with such requirements or regulations, Provider's participation in the MAS Network could be suspended or terminated.

18.  Provider hereby warrants and agrees, and shall ensure on an ongoing basis, that neither it, nor any of its principals, employees, subcontractors or agents, including drivers, owns, is associated with or works for, directly or indirectly, any other transportation provider that has not been disclosed, in writing, to MAS.  Provider shall attest and certify that the foregoing is true and correct upon request from MAS.

19. Provider certifies that all information obtained regarding Enrollees will be held in strict confidence and will be used only as required in the performance of Provider's transportation services and that Provider shall comply with all applicable provisions of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

20. Prior to the execution of this Contract, the Parties will agree on the geographic areas in which Provider will provide NEMT services and the level/type of such services, which information will be electronically entered into the Transportation Provider Profile ("TPP") within the MAS System by Provider immediately upon execution of this Contract. TPP-entered data must also include the identity of the ownership of the Provider, its address, active phone number(s), coverage area by way of zip codes, hours of operation, and capacity by day of week. All such information is subject to review and modification by MAS based on Provider's actual performance. If Provider has listed availability of

5

resources within a particular area and its performance indicates otherwise, MAS reserves the right to adjust Provider's TPP in accordance with actual performance. Provider shall provide such additional information as MAS may reasonably request within three (3) business days of its receipt of such request.  Provider will comply with the following parameters and/or requirements:

20.1.  In order to access the MAS System through an API connection, MAS shall provide Provider with a unique access code ("Key") to be used whenever Provider logs on to the MAS System.  Provider agrees that the Key is only to be used by those of its employees having a need to access or input information in the MAS System. Provider agrees that it will not share its Key with any other person or entity and that it will not use the Key of any other person or entity to access the MAS System. Provider further agrees that it will only access information on the MAS System pertaining to Provider's interactions with MAS and/or NYSDOH.  The failure of Provider to abide by these conditions may result in the suspension of its rights under, or the termination of, this Contract, in the sole discretion of MAS.

20.2.  Provider acknowledges and agrees that any information contained in the MAS System is made available to Provider on an "As Is" basis and that MAS makes no representation or warranty as to the accuracy of any information contained in the MAS System.  Provider acknowledges and agrees that MAS does not guarantee access to the MAS System at all times; however, MAS represents that it will take all reasonable steps to rectify any problems with the MAS System of which it is made aware.

20.3.  Provider agrees to employ applicable industry standards to secure its Key, such as the use of a key vault.

20.4.  Provider agrees that it will immediately notify MAS in the event that it becomes aware or believes that its Key has been compromised in any manner.  Upon such determination, Provider shall immediately cease use of the compromised Key and contact MAS to obtain a replacement Key.

20.5.  Provider will not receive any work unless the TPP is completed and maintained current and up to date, as determined by MAS in its sole discretion.

20.6.  Provider will update any/all information required by MAS immediately via secure link to TPP.

20.7.  Provider is responsible to monitor its trip rosters and to notify MAS in a timely manner regarding any problems in its ability to accommodate a trip or of Provider's inability to complete an assigned trip.

21. Provider shall establish and maintain in working order both a telephone line and electronic or online capability via an Application Programming Interface ("API") for MAS to contact Provider.  Provider shall receive trip reservations via secure software application or website from MAS each day, as available.  For same day or urgent medical appointments, including hospital discharges, Provider shall receive reservations and job numbers from MAS via secure software application.

6

22. New York State policy requires that all Medicaid Transportation trips must include GPS information consistent with the provisions outlined in the NYS and MAS Manuals.  This Contract will not become effective unless Provider is substantially meeting this requirement.

23. Provider shall maintain and utilize a GPS system in all vehicles providing NEMT services that can supply real-time data from the time the trip is assigned to a driver and the trip is completed.  All third-party GPS solutions must be capable of successfully maintaining complete, accurate and timely data exchange with MAS via an API, the viability of which is to be determined by MAS in its sole discretion.  Failure to maintain a GPS system that meets the above requirements is a material breach of this Contract and MAS may immediately suspend all trip assignments to Provider until proper interconnectivity is established and/or terminate the Contract. Provider must comply with the MAS Manual standards regarding GPS use/data submission/deviation correction/software ability. Provider must make any technology changes deemed necessary by the MAS team within 30 days or provide documentation on the action steps that will be taking place to successfully make the changes.

    23.1.    Fully operational GPS capabilities on all vehicles on all Medicaid rides is a requirement under this Contract.

    23.2.    For all dates of service on and after the Effective Date, Provider may not be allowed to attest to any trips that do not contain corresponding GPS information consistent with the MAS and NYS Manuals.

24. Provider is responsible for keeping its TPP up to date.  MAS will only assign trips to Provider that the TPP indicates that Provider can accommodate. Provider is expected to complete all trips assigned to it.  On rare occasions, and to maintain Enrollee safety and an appropriate level of proper and timely service, if Provider determines that an assigned trip must be returned to MAS Provider shall return such trip assignments at least 48 hours prior to the scheduled pick-up time to allow MAS to make alternate arrangements. This requirement applies to all trip assignments that have been submitted to Provider except for trips assigned in less than 48 hours.  Provider will maintain the ability to provide back-up vehicle capability to cover a trip due to vehicle breakdown or mechanical malfunction. Provider will contact MAS should a negative outcome result, such as a missed trip.

25. Provider shall participate in MAS's quality assurance plan, which may include discussing Provider's performance in the delivery of transportation services.  Provider agrees to assist in the development of corrective action plans and cooperate with all data collection that may be requested to monitor the results of such corrective action plans.

26. Provider shall utilize only drivers and vehicles that comply with all applicable New York State licensing and registration requirements.  Provider shall comply with all requirements of the NYSDOH applicable to the provision of NEMT services by Provider.

7

27. Provider's drivers shall have a correctly classified, valid NYS Driver's license. Many NYS jurisdictions have specific classifications for drivers and other requirements for licensure, vehicle registrations and payment of fees to obtain operational approval.  Significant penalties and fees may be assessed to a driver and /or Provider for any violation.  While MAS will seek to assist Provider in identifying such requirements, Provider shall at all times be responsible for complying with all applicable rules and regulations in the jurisdictions in which it operates.

28. Provider agrees to ensure the following:

28.1.  Drivers may not work, in any capacity, for any other Medicaid-enrolled transportation provider while employed by or providing services to Provider.

28.2.  A driver may only work for two transportation provider companies in a rolling 12-month period.  Drivers found not to be in compliance with this requirement may be subject to suspension from the MAS Network.

28.3.  All drivers shall have completed the Community Transportation Association of America's ("CTAA") Passenger Assistance, Safety And Sensitivity ("PASS") basic training module or an alternate, equivalent safety education program.  The content of such alternative training program must be equal to, or more extensive than, the CTAA  PASS program as required in the MAS Manual; MAS will make this determination prior to implementing the use of this alternate program.  Provider shall provide proof of the satisfactory completion of the PASS or equivalent program.

28.4.  Upon request, Provider shall provide to MAS any background screening results on its drivers if circumstances warrant such inquiry. Drivers performing transports must not have disqualifying drug or alcohol offenses in their background screening results.

28.5.  It is MAS's expectation that vehicles used for Medicaid NEMT services be tobacco and smoke free environments. Provider will have policies and procedures in place to maintain this expectation.

29. If Provider or any of its employees or vendors is identified as being associated with possible fraudulent activity that is reportable to NYSDOH and/or a regulatory enforcement agency, Provider and/or its employees and/or subcontractors may, in the exercise of MAS's sole discretion, be placed in an inactive status in the MAS System pending a determination by such agency.

30. Unless a trip has been reassigned or cancelled, Provider shall complete all trips assigned by MAS. Under no circumstances will Provider subcontract trips; doing so may result in the termination of this Contract by MAS in the exercise of its sole discretion. Only services specifically pre-authorized by MAS, and for which an invoice number has been assigned to the Provider by MAS and completed by Provider, will be approved for attestation and compensation via eMedNY.

8

31. Provider shall maintain staff coverage, whether in-office or on-call, for dispatch and recovery until all trips assigned to Provider are complete.

32. Provider shall maintain a process for meeting accident and incident reporting requirements as set forth in the NYS and MAS Manuals when notified of an incident.  Provider shall report all accidents and incidents to MAS no later than 24 hours from such occurrence.  Accident shall mean a vehicle colliding with another vehicle, structure, object, person or animal where an Enrollee is present.  Incident shall mean an occurrence, breakdown or public disturbance that interrupts an authorized trip causing the driver to stop the vehicle, such as when a passenger or driver becomes unruly or ill (stop signs, traffic signals and other similar stoppages are not Incidents).

**AUDIT AND INSPECTION**

33. The Provider shall, within two (2) business days (or such other period as mutually agreed to by the Parties) of a written request, furnish records and information regarding any invoice(s) for service(s), including driver and vehicle records, to MAS, NYSDOH, OMIG, any state Medicaid Agency or Medicaid Fraud Control Unit, the Centers for Medicare and Medicaid Services ("CMS") and any representative of the U.S. Secretary of the Department of Health and Human Services ("DHHS") in compliance with applicable law or regulation.  The Provider shall not destroy or dispose of records that are under audit, review or investigation.

34. Maintenance of Records.

    34.1.  Provider must have a process in place that complies with the Electronic Record Keeping Requirements found in the NYS Manual. Provider is responsible for maintaining and updating its process in accordance with the NYS and MAS Manuals, as such Manuals may be changed from time to time in the sole discretion of NYSDOH or MAS.

    34.2.  Provider shall preserve and make available all records pertaining to the provision of services, including invoicing documentation, under this Contract for a period of six (6) years from the date of final payment, or for such longer period as may be required by applicable law, regulation or any other section in this Contract. Provider shall provide copies of any requested records to MAS, NYSDOH or its agents within three (3) business days of such request.

**OTHER TERMS AND CONDITIONS**

35. The relationship between MAS and Provider is solely that of independent contractors and nothing in this Contract or otherwise shall be construed or deemed to create any other relationship, including one of employer and employee or principle and agent or joint venture or any relationship other than that of independent parties contracting with each other solely for the purpose of carrying out the provisions of this Contract.  Provider is solely responsible for the management and compensation of its employees, subcontractors, drivers and agents, and for the payment of income taxes, employment related taxes and insurance for its employees, including but not limited to workers' compensation and unemployment insurance.

36. Jurisdiction and Venue.  Any dispute whatsoever arising under or related to this

9

Contract, or any Exhibit attached hereto, the use or access of, or involving the MAS System, shall be governed by and construed in accordance with the federal laws of the United States and the laws of the State of New York, without regard to the conflict of laws provisions thereof. Provider specifically agrees that venue and jurisdiction shall be exclusively in the federal and state courts situated in and for Onondaga County in the state of New York, herewith consents to such jurisdiction and waives any defense based on inconvenient forum.

37. Amendments. This Contract (including any Exhibits) may be amended only by a document in writing duly executed by an authorized representative of both Parties. Notwithstanding the foregoing, Provider is obligated to comply with the MAS Manual and the NYS Manual, as those documents may be unilaterally amended from time to time in the sole discretion of NYSDOH or MAS, as the case may be. In addition, MAS may unilaterally amend this Contract as required to comply with applicable law or regulation; in such event, MAS will provide Provider with notice of any such amendment.

38. NYSDOH Amendment. This Contract is subject to approval by the NYSDOH. If the NYSDOH at any time requires modifications to this Contract, the Parties will execute amendments to this Contract reflecting such modifications. If either Party is unwilling to accept any such modifications required by the NYSDOH, this Contract shall terminate immediately upon such Party's refusal to accept such modification(s).

39. Severability. Any determination by a court of competent jurisdiction that any provision of this Contract or any application thereof is invalid, illegal or unenforceable in any respect, such provision shall be amended in such manner as to give effect to the essential purpose of such provision and of this Contract. Further, such determination in any instance shall not affect the validity, legality and enforceability of such provision in any other instance, or the validity, legality or enforceability of any other provision of this Contract. Neither Party shall assert or claim that this Contract or any provision hereof is void or voidable if such Party performs under this Contract without prompt and timely written objection.

40. Assignment. Provider may not assign, transfer, delegate, consign or convey to any other person or entity Provider's rights and responsibilities hereunder without the express, prior written consent of MAS, such consent to be given or withheld in MAS's sole discretion. Any attempted unauthorized assignment shall be null and void from the beginning. MAS may assign its rights and responsibilities under this Contract and any such assignment by MAS shall be communicated to Provider.

41. At its sole discretion, MAS may offer Provider the ability to participate in a Preferred Provider Opportunity ("PPO"), which enables Provider to be selected for Preferred status for transportation needs within a defined terms as set forth in the PPO. To be selected for any portion of a PPO, in addition to committing to provide a high level of consistent service, the Provider must agree to all standards within the PPO and provide an acceptable PPO submission for NYSDOH review. Final recommendations and decisions are at the discretion of NYSDOH, MAS and participating Medical providers. If Provider participates in any PPO, this Contract shall be subordinate to the PPO reimbursement structure, performance standards and other terms for all activities included in the PPO offering. In the event that any provisions of this Contract, including any Exhibits or performance standards, conflict with provisions of the PPO, the provisions of the PPO shall control for all NEMT services involved.

10

## TERMINATION AND/OR REDUCTION IN SCOPE

42. Term. The term of this Contract shall be one year from the Effective Date, which is the date executed by MAS as set forth on the signature page. It shall be automatically renewed for successive one-year periods unless either party shall give notice of termination 90 days prior to the last day of any term.

43. Termination. Except as otherwise provided in this Contract:

    43.1. Either party may terminate this Contract without cause upon 90 days written notice.

    43.2. Either party may terminate this Contract upon 30 days written notice in the event of a material breach of the Contract, provided that the non-breaching party shall have first provided the other party with written notice and description of the breach and ten days to cure the breach.

    43.3. MAS may immediately terminate this Contract for default if Provider fails to perform the services in a timely or satisfactory manner and in accordance with the service, quality and performance standards and requirements of this Contract or in compliance with the NYS or MAS Manuals. Conditions that fall under the category for "Default" shall include, but are not limited to:

    43.3.1. Evidence that Provider or any of its employees, agents, drivers or subcontractors has engaged in illegal or fraudulent activity;

    43.3.2. Engaging in threatening verbal or physical conduct toward an Enrollee, medical provider or MAS staff.

    43.3.3. Cancellation or lapse of insurance coverage at the levels required by this Contract.

    43.4. MAS may terminate this Contract immediately if directed to do so by NYSDOH.

44. Termination after Assignment. If MAS has exercised its right hereunder to assign this Contract to a successor organization, or to the NYSDOH or a designee or agent of the NYSDOH, Provider may not terminate this Contract for 181 days following such assignment.

45. Reduction in Scope. If Provider fails to perform services in conformance with this Contract, MAS may suspend Provider or request a Corrective Action Plan from Provider outlining performance correction measures within a specific time frame. As needed to ensure Enrollee safety or quality of service, the Corrective Action Plan can include a reduction in trip volume, operating hours and/or geographic coverage area.

46. Termination of this Contract shall not release either party from any obligations set forth herein which shall survive this Contract as noted herein or by their nature would be intended to apply after any termination.

47. Provider Appeals. While MAS may terminate a transportation provider for "no cause," the transportation provider will be afforded an appeals process. In this scenario, the transportation provider will notify MAS in writing within 30 days of notification of suspension

11

or termination from the network of their appeal. If the transportation provider chooses to appeal, appropriately authorized representatives of the transportation provider and MAS will meet with the intent of resolving the dispute. Any further appeals of the decision reached by MAS would require requesting an appeal through the NYSDOH. This appeals process will not apply in cases involving imminent harm to Enrollee care, or a determination of fraudulent behavior, or a final disciplinary action by a state licensing board (if applicable) or other Governmental agency. In the event of a determination of fraudulent behavior, MAS will notify NYSDOH as well as the Office of the Medicaid Inspector General (OMIG) within 24 hours. The provider will remain on suspension pending the results of OMIG's investigation.

48. In executing this Contract, Provider certifies that all requirements set forth herein to qualify to become a participant in the MAS Network have been satisfied.

**Unless otherwise indicated, this Contract is entered into and effective on the date executed by Medical Answering Services, LLC as specified below.**

**MEDICAL ANSWERING SERVICES, LLC**          **PROVIDER:** Absolute 1 Transport LLC

Printed Name: ___Russ Maxwell___          Printed Name: ___Robert Kendrick___

Signature: ___*Russ Maxwell*___          Signature : ___*Robert kendrick*___
39D5851990C74EB...          5A47EDD205E246F...

President and CEO

Date:___12/5/2023___          Date: ___11/12/2023___

12

# EXHIBIT A

**NEW YORK STATE
MEDICAID TRANSPORTATION PROGRAM
TRANSPORTATION PROVIDER NETWORK
CONTRACT
Business Associate Agreement**

This Business Associate Agreement ("Agreement") is made effective the  5   day of
___December_____ , 20 _23_ by and between MEDICAL ANSWERING
SERVICES, LLC ("MAS") and __Absolute 1 Transport LLC_____
("Business Associate").

**WITNESSETH**:

**WHEREAS**, Sections 261 through 264 of the Federal Health Insurance Portability and
Accountability Act of 1996, Public Law 104-191, known as "the Administrative Simplification
provisions," direct the Department of Health and Human Services to develop standards to
protect the security, confidentiality and integrity of health information; and

**WHEREAS**, pursuant to the Administrative Simplifications provisions, the Secretary of Health
and Human Services has issued regulations modifying 45 CFR Parts 160 and 164 (the "HIPAA
Security and Privacy Rule"); and

**WHEREAS**, the Parties wish to enter into or have entered into a Non-Emergency Medical
Transportation Contract (the "Contract"), dated ___11/12/2023_____ , whereby
Business Associate will provide certain services to Medicaid enrollees ("Enrollees") through
the brokering services of MAS on behalf of the NYSDOH, and, because of such
arrangement, may be considered a "business associate" of MAS as defined in the HIPAA
Security and Privacy Rule; and

**WHEREAS**, Business Associate may have access to Protected Health Information (as defined
below) in fulfilling its responsibilities under such Contract.

**NOW, THEREFORE**, in consideration of the Parties' continuing obligations under the Contract,
and in compliance with the HIPAA Security and Privacy Rule, the Parties agree to the
provisions of this Contract in order to address the requirements of the HIPAA Security and
Privacy Rule and to protect the interests of both Parties.

**A.     DEFINITIONS**

1.     Business Associate: "Business Associate" shall have the same meaning as the
term "business associate" at 45 CFR § 160.103, and in reference to the party to this
agreement, shall mean __Absolute 1 Transport LLC_____.

2.     Covered Entity: "Covered Entity" shall have the same meaning as the term
"covered entity" at 45 CFR § 160.103, and in reference to the party to this Contract, shall
mean MEDICAL ANSWERING SERVICES, LLC.

3.     Individual: "Individual" shall have the same meaning as the term "individual" in 45
CFR §160.103 and shall include a person who qualifies as a personal representative in

accordance with 45 CFR § 164.502(g).

4. MCD Privacy and Security Requirements means the privacy and security standards, specifications, safeguards and protocols established by DOH as they may be amended from time to time, including but not limited to any and all requirements set forth in security workbooks and the DEAA, addenda to the DEAA and Business Associate Contract with DOH, that apply to access, use, transmission, storage and transmission of Medicaid Confidential Data.

5. Medicaid Confidential Data ("MCD") means any information or data derived from the Medicaid Analytics Performance Portal maintained by DOH about individuals who have applied for or receive Medicaid benefits, including enrollment information, Medicaid claims data, names and addresses, diagnoses, medical services, and other protected health information.

6. Protected Health Information: "Protected Health Information" shall have the same meaning as the term "protected health information" in 45 CFR § 160.103, limited to the information created or received by Business Associate from or on behalf of the MAS, and includes without limitation "Electronic Protected Health Information" as defined in "7" below.

7. Electronic Protected Health Information: "Electronic Protected Health Information" means Protected Health Information which is transmitted by Electronic Media (as defined in the HIPAA Rule) or maintained in Electronic Media.

8. Secretary: "Secretary" shall mean the Secretary of the Department of Health and Human Services or his/her designee.

9. HIPAA Rules: "HIPAA Rules" shall mean the Privacy, Security, Breach Notification, and Enforcement Rules at 45 CFR Part 160 and Part 164.

10. The following terms used in this Contract shall have the same meaning as those terms in the HIPAA Rules: Breach, Data Aggregation, Designated Record Set, Disclosure, Health Care Operations, Minimum Necessary, Notice of Privacy Practices, Required by Law, Security Incident, Subcontractor, Unsecured Protected Health Information, and Use.

## B.  <u>OBLIGATIONS AND ACTIVITIES OF BUSINESS ASSOCIATE</u>

1. Business Associate agrees to not use or disclose Protected Health Information other than as permitted or required by this Contract or as required by law.

2. Business Associate agrees to implement a comprehensive security program in compliance with the HIPAA Rules.

3. Business Associate agrees to use appropriate safeguards and to comply with Subpart C of 45 CFR Part 164 with respect to electronic protected health information, to prevent use or disclosure of protected health information other than as provided for by the Contract or the HIPAA Rules.

4. Business Associate agrees to mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of Protected Health Information by Business Associate in violation of the requirements of this Contract.

5.      Business Associate agrees to implement a comprehensive breach response policy and to report to MAS any use or disclosure of the Protected Health Information not provided for by this Contract of which it becomes aware, including breaches of unsecured protected health information as required by 45 CFR §164.410, and any security incident of which it becomes aware;

6.      Notification of any breach or security incident by the Business Associate will be reported to MAS within one business day. MAS will approve any plan or remedy prepared by the Business Associate regarding any breach or security incident, including but not limited to the time frame for the Business Associate to report a potential breach to MAS and/or whether the Business Associate will handle breach notifications for individuals, the HHS Office for Civil Rights, and potentially the media, on behalf of MAS.

7.      Business Associate agrees that any vendors Business Associate hires to perform services on its behalf and that may create, receive, maintain, or transmit Protected Health Information on behalf of the Business Associate in the performance of such services agree to the same restrictions, conditions, and requirements that apply to the Business Associate with respect to such information.  All such vendors shall be required to execute a business associate agreement with MAS.  No such vendor shall be permitted to access the MAS System until such business associate agreement has been signed by the vendor and MAS. No vendor shall be granted access to any information maintained by MAS in any form until MAS shall have executed such vendor's business associate agreement.

8.      Under no circumstances shall Business Associate provide any vendor with Business Associate's access code ("Key") with which the vendor may gain access to MAS Medicaid transportation management system (the "MAS System").  Any such vendor will be assigned its own unique Key to access the MAS System.

9.      At the request of MAS, and in the time and manner agreed upon by parties, Business Associate agrees to provide access to Protected Health Information in a Designated Record Set to MAS or, as directed by MAS, to an Individual, in order to meet the requirements under 45 CFR § 164.524.

10.     Business Associate agrees to make any amendment(s) to Protected Health Information in a Designated Record Set as directed or agreed by MAS pursuant to 45 CFR §164.526, or to take other measures as necessary to satisfy MAS's obligations under 45 CFR §164.526.

11.     Business Associate agrees to make internal practices, books, and records, including policies and procedures and Protected Health Information received from, or created or received by Business Associate, on behalf of MAS available to the Secretary, in a time and manner designated by the Secretary, for the purposes of the Secretary determining MAS's compliance with the HIPAA Rules.

12.     Business Associate agrees to document any disclosures of Protected Health Information and information related to such disclosures as would be required for MAS to respond to a request by an Individual for an accounting of disclosures of Protected Health Information in accordance with 45 CFR §164.528.

13.     Business Associate agrees to provide to MAS or an Individual, in the time and manner agreed upon by parties, information collected in accordance with Section B.11 of

3

this Contract, to permit MAS to respond to a request by an Individual for an accounting of disclosures of Protected Health Information in accordance with CFR § 164.528.

14.     MAS will monitor Business Associate's trips to identify trends associated with Business Associate's trip refusals. If MAS determines, in the exercise of its sole discretion, that a Business Associate has engaged in potentially discriminatory practices, such determination may result in disciplinary action, including, but not limited to, suspension from the MAS Network.

15.     Business Associate's performance and/or record of customer service for pick-ups will be evaluated on an ongoing basis and must meet Enrollee expectations at all times. If Business Associate is found to be waiting less than 15 minutes for Enrollee pick-ups, resulting in a negative impact on Enrollee satisfaction, Business Associate may be subject to suspension from the MAS Network.

16.      All Medicaid enrollees under the age of 18 years must be transported with their responsible parent or guardian to and from all medical appointments. Business Associates should not accept responsibility on behalf of the parent, guardian or Medicaid program to sign children in and out of school, medical appointments or medical programs. Further, ambulette transportation does not substitute for a responsible parent or guardian accompanying a child to and from a medical appointment or program.

## C.     **<u>PERMITTED USES AND DISCLOSURES BY BUSINESS ASSOCIATE</u>**

1.     <u>General Uses and Disclosure Provisions</u>

a.     Except as otherwise limited in the Business Associate's Contract with MAS, Business Associate may use or disclose Protected Health Information to perform functions, activities, or services for, or on behalf of, MAS as specified in Web Application Security Assessment Penetration Testing, provided that such use or disclosure would not violate the HIPAA Rules if done by the MAS or the minimum necessary policies and procedures of the MAS.

b.     Business Associate may not de-identify Protected Health Information without first obtaining the specific advice, consent and authorization from MAS.  De-identified Protected Health Information must be submitted to MAS and Subcontractor must receive written approval from MAS before Subcontractor may use or disclose such de-identified Protected Health Information.  See 45 CFR § 164.514.

2.     <u>Specific Uses and Disclosure Provisions</u>

a.     Except as otherwise limited in this Contract, Business Associate may use Protected Health Information for the proper management of the Business Associate or to carry out the legal responsibilities of the Business Associate, provided that disclosures are required by law, or Business Associate obtains reasonable assurances from the person to whom the information is disclosed that it will remain confidential and used or further disclosed only as required by law or for the purpose for which it was disclosed to the person, and the person notifies the Business Associate of any instances of which it is aware in which the confidentiality of the information has been breached.

b.      Business Associate may use Protected Health Information to report violations of law to appropriate Federal and State authorities, consistent with 45 CFR §

4

164.502(j)(1).

D.    **CONFIDENTIALITY, PRIVACY, and SECURITY**

1.    Business Associate shall comply with all applicable laws and regulations pertaining to confidentiality, privacy, and security of proprietary and confidential information contained in the MAS System or obtained from MAS, including, but not limited to, HIPAA-protected information. The provisions of this section do not preclude the Business Associate from compliance with federal and state reporting laws and regulations. Further, these provisions also allow the Business Associate to fully meet reporting requirements for audit purposes.  To the extent that Business Associate comes into possession of Confidential Information (as defined herein) belonging to MAS, Business Associate shall maintain such Confidential Information in the same degree of confidentiality as it would maintain its own Confidential Information.  For purposes of this Agreement, Confidential Information shall mean business plans, practices and procedures, marketing information, Enrollee information, computer system programs and configurations and any other information that a reasonable person would deem or consider to be confidential.

2.    Business Associate acknowledges that MAS is bound by a Data Use Agreement ("DUA") and Business Associate Agreement with NYSDOH relating to MAS's access, use, transmission, storage, and disclosure of Medicaid Confidential Data.  Business Associate acknowledges that, by extension as a business associate of MAS, it also is bound by the DUA.  Business Associate and its vendors shall comply with the MCD Privacy and Security Requirements established by NYSDOH with respect to receipt, storage, transmission, use and disclosure of Medicaid Confidential Data ("MCD"). Business Associate and its vendors shall comply with MAS Policies and Procedures to implement the requirements imposed by the DUA, as such procedures are provided to Business Associate by MAS.

3.    The federal Centers for Medicare and Medicaid Services require that all contracts and/or agreements executed between NYSDOH and any second party that will receive Medicaid Confidential Data must include contract language that will bind such parties to ensure that all contractors and subcontractors abide by the regulations and laws that govern the protection of individual, Medicaid confidential level data.  This notification requires that the following language be included in this Agreement and in all future contracts that will govern the receipt and release of MCD, and is accordingly set forth in this Agreement:

> *Medicaid Confidential Data/Protected Health Information (MCD/PHI) includes all information about an Enrollee or applicant, including enrollment information, eligibility data and protected health information.  Business Associates must comply with the following state and federal laws and regulations:*
>
> *Section 367-b(4) of the NY Social Services Law*
>
> *New York State Social Services Law Section 369 (4)*
>
> *Article 27-F of the New York Public Health Law and 18 NYCRR 360-8.1*
>
> *Social Security Act, 42 USC 1396a (a)(7)*
>
> *Federal regulations at 42 CFR 431.302, 42 CFR Part 2*
>
> *Section 33.13 of the New York State Mental Hygiene Law.*
>
> *The Health Insurance Portability and Accountability Act (HIPAA), at 45 CFR Parts 160 and 164*

*Please note that MCD released to subcontractors (vendors) may contain AIDS/HIV related confidential information as defined in Section 2780(7) of the New York Public Health Law.  As required by New York Public Health Law Section 2782(5), the following notice is provided to Business Associate:*

*"This information has been disclosed to you from confidential records which are protected by state law.  State law prohibits you from making any further disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.  Any unauthorized further disclosure in violation of state law may result in a fine or jail sentence or both.  A general authorization for the release of medical or other information is NOT sufficient authorization for the release for further disclosure." Alcohol and Substance Abuse Related Confidentiality Restrictions:*

*Alcohol and substance abuse information is confidential pursuant to 42 CFR Part 2.  General authorizations are ineffective to obtain the release of such data.  The federal regulations provide for a specific release for such data.*

*Business Associate agrees to ensure that Business Associate and any agent, including a further subcontractor or vendor, to whom Business Associate provides MCD/PHI, agrees to the same restrictions and conditions that apply throughout this Agreement.  Further, Business Associate agrees to state in any such agreement, contract or document that the party to whom Business Associate is providing the MCD/PHI may not further disclose it without the prior written approval of the New York State Department of Health.  Business Associate agrees to include the notices preceding, as well as references to statutory and regulatory citations set forth above, in any agreement, contract or document that it enters into that involves MCD/PHI.*

*Neither Business Associate nor any further subcontractors or vendors may use or disclose MCD without the prior written approval of the New York State Department of Health.*

4.      Medicaid Confidential Data: Additional Obligations.  MAS shall complete or ensure completion of an Identity Assurance Assessment as required for approval by NYSDOH for storage of and access to Medicaid Confidential Data by Business Associate.  Business Associate agrees that it shall: (i) cooperate fully in the Identity Assurance Assessment; (ii) implement MCD Privacy and Security Requirements and assure implementation of such requirements by any subcontractors of Business Associate, as applicable; and (iii) provide to MAS a written attestation that Business Associate has implemented MCD Privacy and Security Requirements, as applicable to Business Associate's access to MCD and as provided by MAS.  At the request of MAS, and in the time and manner agreed upon in writing by MAS and Business Associate, Business Associate agrees to provide access to Protected Health Information in a Designated Record Set to MAS or, as directed by MAS, to an Individual or such Individual's designee in order to meet the requirements of 45 CFR § 164.524.

E.      **PROVISIONS FOR MAS TO INFORM BUSINESS ASSOCIATE OF PRIVACY PRACTICES AND RESTRICTIONS**

1.      MAS shall notify Business Associate of any limitation(s) in its notice of privacy practices in accordance with 45 CFR § 164.520, to the extent that such limitation may affect Business Associate's use or disclosure of Protected Health Information.

2.    MAS shall notify Business Associate of any changes in, or revocations of, permission by an Individual to use or disclose Protected Health Information, to the extent that such change may affect Business Associate's use or disclosure of Protected Health Information.

3.    MAS shall notify Business Associate of any restrictions to the use or disclosure of Protected Health Information that MAS has agreed to in accordance with 45 CFR § 164.522, to the extent that such restriction may affect Business Associate's use or disclosure of Protected Health Information.

## F.    IMPERMISSIBLE REQUESTS BY MAS

MAS shall not request Business Associate to use or disclose Protected Health Information in any manner that would not be permissible under the Privacy Rule if done by MAS.

## G.    TERM OF AGREEMENT

The Term of this Contract shall be effective as of __11/12/2023__ and shall terminate when all of the Protected Health Information provided by MAS to Business Associate is destroyed or returned to MAS, or, if it is infeasible to return or destroy Protected Health Information, protections are extended to such information, in accordance with the termination provisions in this Contract.

## H.    TERMINATION

1.    Termination for Cause.  Upon MAS's knowledge of a material breach of a Business Associate's Contract with MAS or this Agreement by Business Associate, MAS shall either:

a.    Provide a reasonable period for Business Associate to cure the breach or end the violation; if Business Associate fails to do so within the time specified by MAS, MAS may terminate Business Associate's Contract with MAS;

b.    Immediately terminate Business Associate's Contract with MAS if the Business Associate has breached a material term of said Contract and cure is not possible; or

c.    If neither termination nor cure is feasible, MAS shall report the violation to the Secretary.

2.    Effect of Termination.

a.    Except as provided in paragraph (b) of this Section, upon termination of Business Associate's Contract with MAS, for any reason, Business Associate shall return or destroy all Protected Health Information received from MAS or created or received by Business Associate on behalf of MAS. This provision shall apply to Protected Health Information that is in the possession of vendors or agents of Business Associates. Business Associates shall retain no copies of the Protected Health Information.

b.    In the event that Business Associate determines that returning or destroying the Protected Health Information is infeasible, Business Associate shall provide to MAS notification of the conditions that make return or destruction infeasible. If MAS determines, in its sole discretion, that the return or destruction of Protected Health Information is infeasible, Business Associate shall extend the protections of this Contract to such Protected Health

7

Information and limit further uses and disclosures of such Protected Health Information to those purposes that make the return or destruction infeasible, for so long as Business Associate maintains such Protected Health Information.

**I.      MISCELLANEOUS**

1.      Regulatory References. A reference in this Contract to a section in the HIPAA means the section as in effect or as amended.

2.      Interpretation. Any ambiguity in this agreement shall be interpreted to permit compliance with the HIPAA Rules and this Contract shall be construed in accordance with applicable federal law and the laws of the State of New York, without regard to its conflicts of laws rules.

3.      Indemnification. Business Associate shall to the fullest extent permitted by law, protect, defend, indemnify and hold harmless MAS and its respective members, employees, directors, and agents from and against any and all losses, costs, claims, penalties, fines, demands, liabilities, legal actions, judgments, and expenses of every kind (including reasonable attorney's fees) asserted or imposed against MAS arising out of the acts or omissions of Business Associate or any of Business Associate's employees, directors, Subcontractors, TPIs or agents related to the performance or nonperformance of this Contract.

Medical Answering Services, LLC                    Business Associate: Absolute 1 Transport LLC

Printed Name: ___Russ Maxwell___                    Printed Name: ___Robert Kendrick___

Signature: ___Russ Maxwell___                    Signature : ___Robert kendrick___
                    39D5851990C74EB...                                        5A47EDD205E246F...

President and CEO

Date : ___12/5/2023___                    Date: ___11/12/2023___

8