UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JAMES BLAZEK, ROBERT KENDRICK, AOT
TRANSPORTATION ARRIVE ON
TIME LLC and ABSOLUTE 1
TRANSPORT LLC,

                        Plaintiffs,

          v.

MEDICAL ANSWERING SERVICES, LLC,

                        Defendant.

Civil Action No. 5:26-cv-717 (AJB)

---

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

---

BOND, SCHOENECK & KING, PLLC

*Attorneys for Defendant*
22 Corporate Woods Blvd., Suite 501
Albany, New York 12211
T: 518.533.3000
E: lorbach@bsk.com, mbarnett@bsk.com,
nvogel@bsk.com

*Of Counsel:*    Louis Orbach
                 Michael Barnett
                 Natalie Vogel

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ........................................................................................................................... 2

ARGUMENT ................................................................................................................................. 6

I.   The Complaint States No Ground For Original Federal Jurisdiction ............................... 6

    a.   Legal Standard .......................................................................................................... 6

    b.   The Court Lacks CAFA Diversity Jurisdiction Over Counts 2 Through 4 .................. 7

    c.   FLSA Is The Only Other Basis For Original Federal Jurisdiction, But No FLSA Claim Exists ............................................................................................................... 9

II.   Plaintiffs Fail To State A FLSA Claim Upon Which Relief Can Be Granted (Count 1) ....................................................................................................................... 9

    a.   Legal Standard .......................................................................................................... 9

    b.   Plaintiffs' FLSA Claim Fails As A Matter of Law .................................................... 10

    c.   Neither Blazek Nor Kendrick Plausibly Alleges MAS Was His Employer ............... 11

        i.   Blazek And Kendrick Fail To Plausibly Allege That MAS Exercised Formal Control Over Them ...................................................................................... 13

        ii.   Blazek And Kendrick Fail To Plausibly Allege That MAS Exercised Functional Control Over Them ...................................................................................... 19

    d.   Even If Blazek Or Kendrick Had Sufficiently Alleged MAS Was Their Joint Employer, They Have Not Plausibly Alleged That They Failed to Receive Minimum Wage or Overtime Pay In Any Given Workweek ...................................................... 22

III.   The Court Should Decline Supplemental Jurisdiction Over Plaintiffs' State-Law Claims (Counts 2-6) ....................................................................................................... 23

    a.   Legal Standard .......................................................................................................... 23

    b.   If Count 1 Is Dismissed And There Is No CAFA Jurisdiction Over Counts 2-4, Counts 2-6 Should Be Dismissed Pursuant To 28 U.S.C. § 1367(c)(3) ..................... 24

    c.   If Count 1 Is Not Dismissed, The Court Should Still Decline To Exercise Supplemental Jurisdiction Over Counts 3-6 .............................................................. 25

IV.   In The Event They Are Not Dismissed On Jurisdictional Grounds, Plaintiffs' State-Law Labor, Quasi-Contract, and Tort Claims Should Be Dismissed For Failure To State A Claim ........................................................................................................................... 26

    a.   Legal Standard .......................................................................................................... 26

b.  Blazek and Kendrick's NYLL Claim Should Be Dismissed for Failure to State a Claim ................................................................................................ 27

c.  The Court Should Dismiss Plaintiffs' Claim Alleging Breach of the Implied Covenant Of Good Faith And Fair Dealing .............................................................................. 27

d.  The Court Should Dismiss Plaintiffs' Claim Alleging Promissory Estoppel .............. 29

e.  The Court Should Dismiss Plaintiffs' Claim Alleging Tortious Interference With Business Relations/Prospective Economic Advantage ............................................... 32

CONCLUSION ................................................................................................................. 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anirudh v. CitiMortgage, Inc.*,
  598 F. Supp. 2d 448 (S.D.N.Y. 2009)......................................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................................9

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................................9

*Bennett v. State Farm Fire & Cas. Co.*,
  181 A.D.3d 777 (2d Dep't 2020).........................................................................................29

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*,
  373 F.3d 296 (2d Cir. 2004)...................................................................................................23

*Camelot Si, LLC v. ThreeSixty Brands Grp. LLC*,
  632 F. Supp. 3d 471 (S.D.N.Y. 2022)...................................................................................33

*Carter v. Dutchess Community College*,
  735 F.2d 8 (2d Cir. 1984)........................................................................................................11

*Carter v. HealthPort Techs., LLC*,
  822 F.3d 47 (2d Cir. 2016).......................................................................................................8

*Carvel Corp. v. Noonan*,
  3 N.Y.3d 182 (2004) ...............................................................................................................34

*Chapman v. Crane Co.*,
  694 Fed. Appx. 825 (2d Cir. 2017).......................................................................................25

*Commisso v. PricewaterhouseCoopers LLP*,
  2012 U.S. Dist. LEXIS 105151 (S.D.N.Y. July 27, 2012) .........................................................8

*Cruz v. Fxdirectdealer, LLC*,
  720 F.3d 115 (2d Cir. 2013)....................................................................................................28

*Cucul v. Major Cleaning, Inc.*,
  2024 U.S. Dist. LEXIS 96423 (E.D.N.Y. May 30, 2024) ................................................. passim

*DeJesus v. HF Mgm't Servs., LLC*,
  726 F.3d 85 (2d Cir. 2013)................................................................................................23, 27

*Delmaestro v Marlin*,
  168 A.D.3d 813 (2d Dep't 2019) ...........................................................................................31

*Donato v. Serv. Experts, LLC,*
  2018 U.S. Dist. LEXIS 167511 (N.D.N.Y. Sept. 28, 2018) .............................................24, 25

*Fangrui v. GW of Flushing I, Inc.,*
  2019 U.S. Dist. LEXIS 4092 (E.D.N.Y. Jan. 9, 2019) .......................................................22

*Fountain v. Karim,*
  838 F.3d 129 (2d Cir. 2016)...........................................................................................6

*Godlewska v. HDA,*
  916 F. Supp. 2d 246 (E.D.N.Y. 2013) ..................................................................14, 16, 17, 19

*Gold v. N.Y. Life Ins. Co.,*
  730 F.3d 137 (2d Cir. 2013)...........................................................................................8

*Hamilton Rsrv. Bank Ltd. v. Democratic Socialist Republic of Sri Lanka,*
  134 F.4th 73 (2d Cir. 2025) ..........................................................................................25

*Harris v. Med. Transp. Mgmt, Inc.,*
  2025 U.S. Dist. LEXIS 206499 (D.D.C. Apr. 11, 2025).....................................13, 15, 16. 17

*Henao v. Parts Auth., LLC,*
  2020 U.S. Dist. LEXIS 176829 (S.D.N.Y. Sept. 25, 2020)................................................23, 24

*Hugee v. SJC Group, Inc.,*
  2013 U.S. Dist. LEXIS 116471 (S.D.N.Y. Aug. 13, 2013)............................................ passim

*Kaye v. Grossman,*
  202 F.3d 611 (2d Cir. 2000)..........................................................................................28

*Klein & Co. Futures v. Bd. of Trade of City of New York,*
  464 F.3d 255 (2d Cir. 2006)..........................................................................................23

*Lamda Sols. Corp. v. HSBC Bank USA, N.A.,*
  574 F. Supp. 3d 205 (S.D.N.Y. 2021)..............................................................................29

*Lopez v. Puri,*
  2022 U.S. Dist. LEXIS 244337 (E.D.N.Y. Sep. 19, 2022)............................................ passim

*Lundy v. Catholic Health Sys. of Long Island Inc.,*
  711 F.3d 106 (2d Cir. 2013)..........................................................................................22

*Lusk v. Serve U Brands, Inc.,*
  2018 U.S. Dist. LEXIS 22693 (W.D.N.Y. Feb. 12, 2018) ....................................................22

*Mattera v. Clear Channel Commc'ns, Inc.,*
  239 F.R.D. 70 (S.D.N.Y. 2006) .......................................................................................8

iv

*McCabe v. Sunbeam Prods., Inc.*,
    2025 U.S. Dist. LEXIS 196568 (E.D.N.Y. Oct. 3, 2025)........................................................9

*Media Sport & Arts S.r.l. v. Kinney Shoe Corp.*,
    1997 U.S. Dist. LEXIS 12394 (S.D.N.Y. Aug. 20, 1997)......................................................31

*Nakahata v. New York-Presbyterian Healthcare Sys.*,
    723 F.3d 192 (2d Cir. 2013)..................................................................................................22

*Paxi, LLC v. Shiseido Ams. Corp.*,
    636 F. Supp. 2d 275 (S.D.N.Y. 2009).....................................................................................30

*Plasticware v. Flint Hills Res.*,
    852 F. Supp. 2d 398 (S.D.N.Y. 2012).....................................................................................34

*Revitalizing Auto Cmtys. Envtl. Response Trust v. Nat'l Grid USA,*
    92 F.4th 415 (2d Cir. 2024) ..................................................................................................10

*Romero v. Metro Transp. Auth.*,
    444 F. Supp. 3d 583 (S.D.N.Y. 2020).....................................................................................23

*Saulsbury v Durfee*,
    201 AD3d 1318 (4th Dep't 2022)...........................................................................................33

*Steinbeck v. Steinbeck Heritage Found.*,
    400 Fed. Appx. 572 (2d Cir. 2010).........................................................................................31

*Suarez v. Murray*,
    2021 U.S. Dist. LEXIS 65016 (S.D.N.Y. Apr. 2, 2021).....................................................12, 13

*That's What She Said, Inc. v. Gutter Games Ltd.*,
    2024 U.S. Dist. LEXIS 138014 (S.D.N.Y. Aug. 5, 2024)..................................................29, 31

*Thome v. Alexander & Louisa Calder Found.*,
    70 A.D.3d 88 (1st Dep't 2009) ........................................................................................32, 34, 35

*Treglia v. Town of Manlius*,
    313 F.3d 713 (2d Cir. 2002)...................................................................................................26

*Valencia v. Lee*,
    316 F.3d 299 (2d Cir. 2003)...................................................................................................24

*Wisconsin Dep't of Corrections v. Schacht*,
    524 U.S. 381 (1998)...............................................................................................................23

*Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*,
    736 Fed. Appx. 274 (2d Cir. 2018).........................................................................................27

*Zheng v. Liberty Apparel Co. Inc.,*
    355 F.3d 61 (2d Cir. 2003)........................................................................ passim

**Statutes**

28 U.S.C. § 1332........................................................................................7, 8

28 U.S.C. § 1367...............................................................................23, 24, 25

29 U.S.C. § 216.............................................................................................10

Class Action Fairness Act ("CAFA")....................................................... passim

Fair Labor Standards Act ("FLSA")........................................................ passim

Social Services Law Section 365-h(4)(b) .............................................3, 15, 16

**Other Authorities**

42 CFR § 440.170 .......................................................................3, 15, 17

Rule 12 .................................................................................... passim

Rule 23 ............................................................................................6

Defendant Medical Answering Services, LLC ("MAS"), by and through its attorneys, Bond, Schoeneck & King, PLLC, submits this memorandum of law in support of its motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) and/or for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

**PRELIMINARY STATEMENT**

MAS is the broker for the New York State Medicaid non-emergency medical transportation ("NEMT") program. Operating within the legal framework enacted by New York State and the federal government, MAS contracts with transportation providers — including, for 2024 and until March 2025, Plaintiffs AOT Transportation Arrive on Time LLC ("AOT") and Absolute 1 Transport LLC ("Absolute 1") — to provide NEMT services to Medicaid enrollees who request transportation to and from medical appointments. AOT and Absolute 1 each entered into a written contract with MAS. In March 2025, MAS notified AOT and Absolute 1 that their contracts had been terminated.

AOT and Absolute 1 contest the termination of their contracts. At best, they can each assert a breach of contract claim against MAS in state court (which MAS would seek to dismiss via summary judgment). MAS finds itself in federal court because Plaintiffs James Blazek ("Blazek") and Robert Kendrick ("Kendrick"), who own AOT and Absolute I respectively, implausibly claim to be employees of MAS and assert, on behalf of themselves and purportedly on behalf of members of a putative class, claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") (Counts 1-2). These claims fail as a matter of law, based on the facts alleged in the Complaint, the contracts on which the Complaint relies, federal and state law governing NEMT providers, and caselaw that includes a recent decision by a District of Columbia federal court rejecting an identical theory asserted against another NEMT broker. Neither Blazek nor Kendrick

1

plausibly pleads that MAS was their employer. But even if they had, their FLSA and NYLL claims would still fail because neither Blazek nor Kendrick plausibly pleads that he failed to receive minimum wage or overtime earned in any given workweek.

Because there is no FLSA claim, and no diversity jurisdiction over any state-law claim, the Court should decline to exercise supplemental jurisdiction over the state-law claims and dismiss this case in its entirety.

If the Court were to assess the state-law claims other than AOT and Absolute 1's breach of contract claim (Count 3), it should conclude that they are not well pled. Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing (Count 4) is duplicative of their breach of contract claim. AOT and Blazek's claim for promissory estoppel (Count 5) is precluded by the contract that AOT signed, and based on a single ambiguous statement, made by a low-level MAS employee, that no reasonable person would have relied upon. Finally, the claim for tortious interference with business relations (Count 6) is duplicative of the breach of contract claim, impermissibly based on sweeping and conclusory allegations, and fails to plead tortious, criminal or otherwise wrongful conduct aimed at the Medicaid enrollees who used AOT's and Absolute 1's services.

In sum, this is a breach of contract dispute that should have been brought in state court. Plaintiffs have sought to dress it up with class action, labor law, tort, and quasi-contract claims that the law does not support. For the reasons set forth below, this Court should dismiss the Complaint in its entirety.

## BACKGROUND

Plaintiffs AOT and Absolute 1, limited liability companies operating in New York, were providers of NEMT services to Medicaid enrollees. Compl. ¶¶ 14-15, 26-27. Blazek and Kendrick

are owners of AOT and Absolute 1, respectively, and were also drivers for those companies. Compl. ¶¶ 1, 3, 12-13, 73, 88. Blazek and Kendrick, at all relevant times referenced in the Complaint, resided in New York. Compl. ¶¶ 12, 13.

MAS is a limited liability company based in Syracuse, New York, and is designated by the New York State Department of Health ("DOH") as the statewide broker of NEMT services. Compl. ¶¶ 16-17. NEMT brokerage is regulated by both federal and state law. Federal regulations permit states to establish NEMT brokerage programs and prescribe the requirements for doing so, including the selection of a broker through a competitive bidding process. 42 CFR § 440.170(a)(4). To qualify for federal financial participation, states that adopt a brokerage program must, with few exceptions, prohibit brokers themselves from providing NEMT services. 42 CFR § 440.170(a)(4)(ii)(A). New York's NEMT brokerage program is governed by Social Services Law Section 365-h(4)(b), which requires the NEMT broker, among other things, to: develop and maintain a network of high-quality, Medicaid-enrolled transportation providers; develop mandatory corrective actions for transportation providers that fall under quality performance standards; implement technologies to effectuate efficient transportation services; and report on the transportation program's performance, including recipient wait times. N.Y. Soc. Serv. § 365-h(4)(b)(ii). New York law incorporates the federal prohibition barring NEMT brokers themselves from providing transportation services. N.Y. Soc. Serv. § 365-h(4)(b)(i)(D).

In its role as New York State's NEMT broker, MAS entered into a written Transportation Provider Network Contract with AOT ("AOT Contract") for AOT's provision of NEMT services to Medicaid enrollees. Compl. ¶ 26. MAS also entered into a written Transportation Provider Network Contract with Absolute 1 ("Absolute 1 Contract") for Absolute 1's provision of NEMT services to Medicaid enrollees. *Id.* ¶ 27. Both AOT and Absolute 1 are designated as transportation

providers under their respective contracts. *See* Declaration of Brian Renna ("Renna Decl."), Exs. 1-2 (copies of contracts).

As set forth in the contracts, MAS, as the NEMT broker, (i) receives transportation requests from or on behalf of Medicaid enrollees; (ii) verifies Medicaid enrollees' eligibility; (iii) assigns trips to eligible transportation providers; (iv) submits trip requests to transportation providers; and (v) performs other administrative functions as necessary to meet requirements set by the DOH. Renna Decl., Ex. 1 p. 1, Ex. 2 p. 1. The contracts require AOT and Absolute 1 to inform MAS of their available transportation resources within particular geographic areas; MAS and each transportation provider must agree on the geographic areas in which the provider will perform NEMT services. *Id.*, Ex. 1 ¶ 20, Ex. 2 ¶ 20. AOT and Absolute 1 agreed to accept the trip rates set by New York State in the Rate Schedule contained in the New York State Medicaid Transportation Policy Manual ("NYS Manual"). *Id.*, Ex. 1 ¶ 5, Ex. 2 ¶ 5. The contracts expressly provide that neither AOT nor Absolute 1 would bill MAS for completed trips. *Id.*, Ex. 1 at p. 1, Ex. 2 at p. 1. Instead, they were required to submit requests for payment to New York State through eMedNY. *Id.* The contracts also established that AOT and Absolute 1 were solely responsible for the management and compensation of their drivers. *Id.*, Ex. 1 ¶ 35, Ex. 2 ¶ 35.

Both the AOT and Absolute 1 Contracts were subject to DOH approval and incorporated the DOH's NYS Manual. Renna Decl., Ex. 1 ¶¶ 4, 38, Ex. 2 ¶¶ 4, 38; *see also* Compl. ¶ 29 ("The provider contracts require compliance with the Manual[.]"). The NYS Manual confirms that MAS "has no vehicles" and "will not provide transportation in competition with existing Medicaid-enrolled transportation vendors" such as AOT and Absolute 1. Renna Decl., Ex. 3 p. 13. It also requires MAS to provide all participating transportation providers with access to MAS's web-based system to accept, cancel or request changes to trips. *Id.*, p. 14.

Blazek and Kendrick allege that "through" AOT and Absolute 1, respectively, they provided NEMT services to Medicaid enrollees. Compl. ¶¶ 40, 45. Both Blazek and Kendrick allege that they performed this work as their primary occupations and "routinely worked" in excess of 40 hours per week fulfilling MAS-assigned rides. *Id.* ¶¶ 41, 46. Blazek and Kendrick complain that MAS did not treat them as employees for wage and hour purposes, and bring claims for unpaid minimum wage and overtime under the FLSA and NYLL. Compl. ¶¶ 44, 48, 86-99.

Moreover, Plaintiffs allege that although providers were permitted to block out entire calendar days on which they were unavailable to provide NEMT services, providers were unable to block out specific times within a day, and MAS repeatedly assigned trips during time periods where Plaintiffs were committed to previously assigned rides or located in another county. Compl. ¶¶ 32-33. When AOT or Absolute 1 declined trips they were unable to perform, MAS recorded the refusals as "reassignment" or "refusal" rates. *Id.* ¶¶ 34-35. Blazek further alleges that a MAS field liaison, identified as "Arias," assured him in writing that reassignment rates were not punitive. Compl. ¶ 50. Relying on that assurance, Blazek claims he purchased a second vehicle in March 2025 for approximately $30,000. Compl. ¶ 51.

On or about March 20, 2025, MAS informed Absolute 1 that it was terminated from the MAS network effective March 21, 2025. Compl. ¶ 60. On or about March 27, 2025, MAS informed AOT that it was terminated from the MAS network effective March 28, 2025. *Id.* ¶ 53. In both instances, MAS cited high reassignment rates as the termination reason. *Id.* ¶¶ 53-54, 60.

## ARGUMENT

### I.     The Complaint States No Ground For Original Federal Jurisdiction

#### a.  Legal Standard

If subject-matter jurisdiction is challenged, the plaintiff has the burden to show that it exists by a preponderance of the evidence. *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016). When a defendant moves to dismiss a cause of action for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), it can bring a facial challenge, a factual challenge, or both. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016). In a facial challenge, the defendant argues that the Court lacks subject-matter jurisdiction judging solely from a complaint's allegations, which are presumed to be true, as in a Rule 12(b)(6) motion. *Id.* In a factual challenge, the defendant provides the Court with additional facts beyond those in the pleading, to controvert the Complaint's allegations and argue that jurisdiction is lacking. *Id.* When the defendant has made a factual challenge, the Complaint's jurisdictional allegations are not presumed to be true, and plaintiff has the burden to demonstrate that jurisdiction does, in fact, exist. *Id.*; *Anirudh v. CitiMortgage, Inc.*, 598 F. Supp. 2d 448, 452 (S.D.N.Y. 2009) ("Although plaintiffs have sufficiently pled federal subject matter jurisdiction pursuant to CAFA [Class Action Fairness Act] on the face of the Complaint, on a motion to dismiss for lack of subject matter jurisdiction we are not required to accept as true the allegations in the Complaint relating to jurisdiction, but may consider affidavits and other materials beyond the pleadings to determine whether the plaintiff has established jurisdiction"). Here, MAS makes both a facial and factual challenge to subject matter jurisdiction.

6

### b.   The Court Lacks CAFA Diversity Jurisdiction Over Counts 2 Through 4

Plaintiffs erroneously assert that the Court has diversity jurisdiction over their NYLL claim for unpaid wages and overtime (Count 2), as well as their contract claims (Counts 3-4). Plaintiffs allege that diversity jurisdiction exists pursuant to CAFA, because "(a) the proposed Rule 23 class(es) number, upon information and belief, at least 100 members; (b) minimal diversity exists; and (c) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs." Compl. ¶ 7.[1]  This is the extent of Plaintiffs' argument for diversity jurisdiction.

CAFA allows for original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5 million and (2) "minimal diversity," *i.e.*, where at least one plaintiff and one defendant are citizens of different states. 28 U.S.C. § 1332(d)(2). CAFA includes several exceptions to this jurisdictional hook, including the "home-state" exception: "[a] district court shall decline to exercise jurisdiction . . . over a class action in which . . . two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).

Here, there is no basis for asserting minimal diversity and, in any event, the "home-state" exception applies, requiring the Court to reject original federal jurisdiction under CAFA.

There is no minimal diversity because all known litigants are citizens of New York. The Defendant, MAS, is a New York LLC, operating only in New York, whose sole member, Russell Maxwell, is a New York resident. Compl. ¶ 16; Renna Decl. ¶ 3.  AOT and Absolute 1 are also New York LLCs; each has a sole identified member, Blazek and Kendrick, who are New York residents. Compl. ¶¶ 12-15. Plaintiffs offer no facts supporting their assertion of "minimal diversity," and the only known facts, just summarized, refute that assertion. *See Carter*, 822 F.3d

---

[1] Plaintiffs do not appear to assert CAFA jurisdiction over Counts 5 and 6 as these counts are not styled as class claims. *See* Compl. ¶¶ 111-125. But the same conclusion – no CAFA jurisdiction – would apply.

7

at 59-60 (a plaintiff's mere assertion of minimal diversity is inadequate if it is not supported by factual allegations). Plaintiffs also fail to plausibly allege an amount in controversy of at least $5 million. Because neither minimal diversity nor the minimum amount in controversy is adequately alleged, the Court must reject Plaintiffs' claim of CAFA diversity jurisdiction for Counts 2 through 4.

Even if minimal diversity existed with a plausible amount in controversy exceeding $5 million, federal jurisdiction would still be lacking because of CAFA's home-state exception. *Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 139 (2d Cir. 2013) ("The home state exception requires district courts to 'decline to exercise' jurisdiction over class actions in which two-thirds or more of the class, and the primary defendants, are citizens of the state in which the action was filed. 28 U.S.C. § 1332(d)(4)(B)"). Here, the home-state exception applies because this case was originally filed in a New York federal court, the only defendant is a New York citizen, and more than two-thirds of the members of the putative class reside in New York.

According to MAS' analysis of the driver's license information for all drivers, across all transportation providers, approximately 97.5% percent of drivers are licensed in New York, Renna Decl. ¶ 7, putting this case well within the home-state exception to CAFA diversity jurisdiction. *See, e.g.*, *Anirudh*, 598 F. Supp. 2d at 451-52 (relying on defendant's affidavit stating that 96.7% of mortgage loans at issue in suit were New York co-op loans to conclude that class of loan borrowers was likely comprised of all New York citizens and that therefore, the home-state exception applied); *Commisso v. PricewaterhouseCoopers LLP*, 11-cv-5713 (NRB), 2012 U.S. Dist. LEXIS 105151, *20 n. 9 (S.D.N.Y. July 27, 2012) (holding that discretionary CAFA diversity exception applied based on defendant's submissions regarding the citizenship of its current and former employees as reflected in available human resources records); *Mattera v. Clear Channel*

8

*Commc'ns, Inc.*, 239 F.R.D. 70, 80-81 (S.D.N.Y. 2006) (assuming that one- to two-thirds of the class were New York citizens because the entire putative class was employed by a New York-based company). The home-state exception is a separate and sufficient reason for the Court to reject Plaintiffs' claim of diversity jurisdiction for Counts 2 through 4. Finally, even if the home-state exception did not apply, the Court should exercise its discretion to decline jurisdiction pursuant to 28 U.S.C. § 1332(d)(3).

For these reasons, the Court lacks CAFA diversity jurisdiction over Counts 2 through 4.

### c. FLSA Is The Only Other Basis For Original Federal Jurisdiction, But No FLSA Claim Exists

The Complaint's only other asserted basis for original federal jurisdiction is its FLSA claim (Count 1), which, as discussed below, fails to state a claim.

## II. Plaintiffs Fail To State A FLSA Claim Upon Which Relief Can Be Granted (Count 1)

### a. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Id.*[2]

---

[2] That Plaintiffs style their Complaint as a putative "class action" does not lessen these pleading requirements. Their Complaint must be dismissed unless they have factually pled plausible claims for

In considering a motion to dismiss, a court is typically restricted to considering whether the allegations, as contained within the four corners of the complaint (and any attachments thereto), are well-pled. But where, as here, a complaint specifically and repeatedly references documents that are not attached to the complaint but which are integral to certain assertions made in the complaint, the court may consider these documents as well in deciding whether a plaintiff's claims should survive a motion to dismiss. *See, e.g.*, *Revitalizing Auto Cmtys. Envtl. Response Trust v. Nat'l Grid USA*, 92 F.4th 415, 436 (2d Cir. 2024). On this motion to dismiss, MAS respectfully asks the Court to consider the Transportation Provider Network Contract between AOT and MAS (Exhibit 1 to the Declaration of Brian Renna), the Transportation Provider Network Contract between Absolute and MAS (Exhibit 2), and the New York State Medicaid Transportation Policy Manual (Exhibit 3), each of which the Complaint repeatedly references. *See, e.g.*, Compl. ¶¶ 1, 26-30, 55-58, 62-63, 78, 82, 100-105 (references to the Transportation Provider Network Contracts); *Id.* ¶¶ 18, 29-30, 102, 104 (references to the Manual).

### b. Plaintiffs' FLSA Claim Fails As A Matter of Law

Blazek and Kendrick each assert a claim against MAS for unpaid overtime and, "[t]o the extent applicable," minimum wage under the FLSA. Compl. ¶¶ 90, 91. Each claim fails for two independent reasons. First, neither Blazek nor Kendrick alleges facts sufficient to plausibly plead that MAS was their employer. Second, neither Blazek nor Kendrick alleges facts sufficient to plausibly plead that either failed to receive minimum wage or overtime earned in any given workweek. For each of these reasons, Blazek's and Kendrick's claims against MAS under the FLSA must be dismissed.

---

themselves. *See, e.g., McCabe v. Sunbeam Prods., Inc*., 24-CV-5510 (EK), 2025 U.S. Dist. LEXIS 196568, at *4 (E.D.N.Y. Oct. 3, 2025) ("On behalf of the putative class, the complaint asserts claims . . . under the laws of eleven states and the District of Columbia. Since McCabe is the only named plaintiff, we evaluate only her own . . . claim at this stage") (cleaned up).

10

### c.  Neither Blazek Nor Kendrick Plausibly Alleges MAS Was His Employer

Only employers are liable for claims of unpaid minimum wage and overtime under the FLSA. 29 U.S.C. § 216(b). "[F]or a defendant to be liable under the FLSA . . . for any cause of action, that defendant must have been the plaintiff's 'employer.'" *Cucul v. Major Cleaning, Inc.*, 22-cv-601 (KAM), 2024 U.S. Dist. LEXIS 96423, *20 (E.D.N.Y. May 30, 2024). Accordingly, Blazek and Kendrick's FLSA claims against MAS must be dismissed because neither of them plausibly alleges MAS was his employer. *See, e.g., Id.* at *43 (granting motion to dismiss where facts alleged in the complaint did not "warrant the conclusion that the [] Defendants jointly employed the Plaintiffs").

The Complaint does not allege that Blazek or Kendrick provided driving services directly to MAS. Rather, Blazek and Kendrick allege they provided services to MAS "through AOT" or "through Absolute 1," respectively. Compl. ¶¶ 40, 45. Where, as here, an employee has a primary employer, but alleges to be employed by a second entity with which their primary employer has a contractual relationship, courts analyze whether a "joint employment" relationship exists. *See, e.g., Cucul*, 2024 U.S. Dist. LEXIS 96423, *21-22.[3]

To determine "whether a [joint] employment relationship exists for purposes of the FLSA, [courts] must evaluate the 'economic reality' of the relationship." *Hugee v. SJC Group, Inc.*, 2013 U.S. Dist. LEXIS 116471, *9 (S.D.N.Y. Aug. 13, 2013) (quoting *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984)). As the Second Circuit has cautioned, this "economic reality" inquiry "is intended to expose outsourcing relationships that lack a substantial economic purpose,

---

[3] The Complaint alleges that MAS misclassified Blazek and Kendrick as independent contractors. Compl. ¶¶ 44, 48. This theory is misplaced. It is undisputed that MAS had a contractual relationship with AOT and Absolute 1, not Blazek or Kendrick. Compl. ¶¶ 26, 27. Accordingly, the relevant inquiry is whether MAS was a joint employer of Blazek or Kendrick, not whether MAS improperly classified them as independent contractors.

11

but it is manifestly not intended to bring normal, strategically-oriented contracting schemes within the ambit of the FLSA." *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 76 (2d Cir. 2003).

Courts predominately apply two "economic reality" tests: the "formal control" test (also known as the *Carter* test) and the "functional control" test (also known as the *Zheng* test).[4] *Hugee*, 2013 U.S. Dist. LEXIS 116471, *9-11. The formal control test asks whether the alleged joint employer: "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Carter*, 735 F.2d at 12. The functional control test examines the following factors:

> (1) whether [the purported joint employer's] premises and equipment were used for the plaintiffs' work; (2) whether the [direct employers] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the purported joint employer's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [purported joint employer] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the [the purported joint employer].

*Zheng*, 355 F.3d at 72. To conclude that an entity is not a joint employer, "the Court need not decide that *every* factor weighs against joint employment." *Id.* at 76-77 (emphasis in original).

On a motion to dismiss, "[t]he determination of whether [the defendant] jointly employed Plaintiff thus begins with an analysis under the *Carter* test to examine the degree of formal control, if any, [the defendant] exercised over Plaintiff." *Hugee*, 2013 U.S. Dist. LEXIS 116471, *11

---

[4] The functional control test is primarily evaluated in the context of a subcontractor relationship, which is not alleged to exist here. *See, e.g., Suarez v. Murray*, 20-cv-3514 (JCM), 2021 U.S. Dist. LEXIS 65016, *15 (S.D.N.Y. Apr. 2, 2021) ("The Second Circuit has clarified . . . that the [functional control] factors are most relevant in the context of subcontractor relationships, while the [formal control] factors bear directly on whether workers who are already employed by a primary employer are also employed by a second employer") (cleaned up). Even assuming *arguendo* the functional control test applies, as discussed *infra*, the Complaint fails to plausibly plead a joint employer relationship under that test.

12

(cleaned up). "If Plaintiff fails to sufficiently allege that [the defendant] exercised 'formal control' over him, the *Zheng* standard, and any other relevant factors, will be analyzed to determine whether or not Plaintiff has sufficiently alleged [the defendant's] 'functional control' over him." *Id.* at *12 (cleaned up).

As discussed below, the type of "control" MAS is alleged to have exercised is not the kind that amounts to employment under either the *Carter* or *Zheng* test, but instead reflects MAS's obligations as New York State's NEMT broker. *See Harris v. Med. Transp. Mgmt, Inc.*, 17-cv-1371 (APM), 2025 U.S. Dist. LEXIS 206499, *33-60 (D.D.C. Apr. 11, 2025) (at summary judgment, declining to find that NEMT broker was drivers' joint employer). Courts regularly dismiss complaints where, as here, plaintiffs fail to plausibly allege joint employment under the formal or functional control tests. *See e.g., Cucul*, 2024 U.S. Dist. LEXIS 96423, *43-44; *Lopez v. Puri*, 20-cv-3450 (AMD), 2022 U.S. Dist. LEXIS 244337, *9-15 (E.D.N.Y. Sep. 19, 2022); *Suarez*, 2021 U.S. Dist. LEXIS 65016, *19-30; *Hugee*, 2013 U.S. Dist. LEXIS 116471, *30-31.

### i.     Blazek And Kendrick Fail To Plausibly Allege That MAS Exercised Formal Control Over Them

As discussed below, each "formal control" factor weighs against finding a plausible claim that MAS was Blazek's or Kendrick's joint employer.

**MAS Had No Power to Hire or Fire Blazek or Kendrick**: The Complaint does not allege MAS had the power to direct AOT or Absolute 1 to hire or fire Blazek or Kendrick. Thus, this first "formal control" factor weighs against finding a plausible claim of joint employment. *See, e.g., Hugee*, 2013 U.S. Dist. LEXIS 116471, *12-13 (granting motion to dismiss where, *inter alia*, "Plaintiff fail[ed] to allege sufficient facts to demonstrate [the defendant's] ability to hire and fire him"); *Cucul*, 2024 U.S. Dist. LEXIS 96423, *23-24 (same).

13

**MAS Had No Power to Supervise or Control Blazek's or Kendrick's Work Schedule or Conditions of Employment**: The Complaint contains no allegations that MAS supervised or controlled Blazek's or Kendrick's work schedules or conditions of employment. Instead, it alleges that MAS assigned trips to AOT and Absolute 1 in their capacity as transportation providers. Compl. ¶¶ 18, 26-28, 103. The Complaint does not allege that MAS directed AOT or Absolute 1 to assign any particular driver to a trip, nor that MAS set Blazek's or Kendrick's schedule. "Simply determining when a certain job will be performed is not tantamount to determining which employee will perform that job at a particular time." *Godlewska v. HDA*, 916 F. Supp. 2d 246, 259 (E.D.N.Y. 2013).[5]

The only "control" that Blazek and Kendrick allege MAS exerted appears in paragraphs 42 and 47 of the Complaint, which consists of: "(a) exclusive control over trip assignments and access to Medicaid riders; (b) mandatory use of MAS's secure platform; (c) strict timing requirements; and (d) the practical ability to terminate access to all Medicaid transportation work on one day's notice." Compl. ¶¶ 42, 47. However, the Complaint elsewhere concedes that each alleged form of control was applied to AOT and Absolute 1 as providers, not Blazek or Kendrick as drivers. Specifically, the Complaint alleges that MAS "controls <u>providers'</u> access to rider demand"; "requires <u>providers</u> to use MAS's secure software platform and roster system to receive reservations, accept/decline assignments, and manage schedules"; "require[s] that <u>providers</u> pick up enrollees within approximately fifteen (15) minutes of the scheduled time"; and terminated its contracts with the <u>providers</u>, AOT and Absolute 1, not Blazek or Kendrick. Compl. ¶¶ 19, 21, 22, 100-110 (emphasis added).

---

[5] Moreover, even with respect to AOT and Absolute 1, the Complaint does not allege that MAS dictated work schedules. The Complaint concedes that "MAS's platform allows providers to block out entire days on which they are unavailable[.]" Compl. ¶ 32.

Even if the allegations in paragraphs 42 and 47 of the Complaint could be imputed to Blazek or Kendrick as drivers, they are insufficient to plausibly plead a joint employment relationship because the purported indicia of control arises entirely from MAS's obligations to New York State as the state's NEMT broker. In *Harris*, the court expressly declined to find that an NEMT broker was a joint employer of drivers because, *inter alia*, the "control" it allegedly exercised over drivers reflected its contractual obligations to the District of Columbia. 2025 U.S. Dist. LEXIS 206499, *46-49.

For instance, the allegation that MAS had "exclusive control over trip assignments and access to Medicaid riders" (Compl. ¶¶ 42(a), 47), is merely a restatement of MAS's role as an NEMT broker under its contract with New York State. Federal and state law provide for NEMT brokers to contract with the state to manage NEMT services and regulate the broker's role. 42 CFR § 440.170(a)(4); N.Y. Soc. Serv. § 365-h(4)(b). The DOH's NYS Manual expressly defines MAS's role, as the "transportation broker," as "the entity . . . with which the commissioner contracts to cost-effectively administer non-emergency transportation services to Medicaid enrollees in accordance with Social Services Law section 365-h(4)(b)." Renna Decl., Ex. 3 p. 8.[6]

Likewise, the allegation that MAS "mandat[ed] use of MAS's secure platform" (Compl. ¶¶ 42(b), 47) merely reflects that New York law requires MAS, as the designated NEMT broker, to "implement[] technologies to effectuate efficient transportation services." N.Y. Soc. Serv. § 365-h(4)(b)(ii)(F). Accordingly, the NYS Manual requires MAS to provide access to its "web-based systems" to all participating transportation providers (such as AOT and Absolute 1) for the purpose of accepting, canceling or changing trips. Renna Decl., Ex. 3 p. 14.

---

[6] Pursuant to competitive procurement, MAS assumed this broker role in New York State on August 1, 2023. Renna Decl., Ex. 3 p. 13.

Similarly, Blazek and Kendrick allege that MAS imposed "strict timing requirements" (Compl. ¶¶ 42(c), 47), but New York law requires MAS to impose such standards. The Social Services Law requires that MAS "ensure that patients have reasonable and timely access to medically appropriate transportation services" and report "wait times related to the receipt of services by a recipient." N.Y. Soc. Serv. § 365-h(4)(b)(ii)(E),(I). As the *Harris* court found, "set[ting] requirements on the timeliness of trips" does not support a joint employment determination against an NEMT broker. 2025 U.S. Dist. LEXIS 206499, *46. Even outside the NEMT context, "supervision with respect to contractual warranties of quality and time of delivery has no bearing on the joint employment inquiry, as such supervision is perfectly consistent with a typical, legitimate subcontracting arrangement." *Zheng*, 355 F.3d at 75.

Finally, Blazek and Kendrick allege that MAS had "the practical ability to terminate access to all Medicaid transportation work on one day's notice." Compl. ¶¶ 42(d), 47. But here again, the Social Services Law expressly requires MAS to develop and implement "mandatory corrective actions for any [transportation] provider that falls under quality performance standards." N.Y. Soc. Serv. § 365-h(4)(b)(ii)(C). Thus, even assuming, *arguendo*, that this concerned Blazek and Kendrick as drivers, rather than AOT and Absolute 1 as providers, it would be insufficient to plausibly allege a joint employment relationship. As the *Harris* court found, an NEMT broker's "limited authority to terminate drivers from providing NEMT services is . . . more consistent with its general role in controlling the quality of services, rather than as a joint employer." 2025 U.S. Dist. LEXIS 206499, *51-52. "Exercising quality control by having strict standards and monitoring compliance with those standards does not constitute supervising and controlling employees' work conditions." *Godlewska*, 916 F. Supp. 2d at 259. "This is especially true where the quality control's purpose is to ensure compliance with the law or protect clients' safety." *Id.*

16

In short, the type of "control" alleged in paragraphs 42 and 47 of the Complaint is not indicative of joint employer status because it arises solely from MAS' obligations, established pursuant to federal and state law, to broker NEMT services and maintain the standards by which those services are provided. *Godlewska*, 916 F. Supp. 2d at 261 (finding defendants were not joint employers because their actions "stem[med] entirely from the 'nature of the business' of providing heavily regulated, government-funded [Medicaid] health services"). In *Harris*, the court declined to find that an NEMT broker was a joint employer of drivers where, *inter alia*, "[t]here [was] no evidence that [the NEMT broker] dictate[d] how many hours each driver work[ed], require[d] drivers to work additional hours, provide[d] [transportation providers] instructions over specific staffing of individual assignments, or instruct[ed] [transportation providers] regarding overtime payments." 2025 U.S. Dist. LEXIS 206499, *45. Here, the Complaint does not even allege MAS did any of those things. As discussed above, the actions that the Complaint attributes to MAS stem from MAS's regulated obligations as New York State's NEMT broker and thus weigh against a joint employment determination. *See id.* at *45-46; *see also Godlewska*, 916 F. Supp. 2d at 261. Any argument of a joint employer relationship is further belied by the fact that both federal and state regulations generally prohibit MAS from providing NEMT services itself. 42 CFR § 440.170(a)(4)(ii)(A); N.Y. Soc. Sev. § 365-h(4)(b)(i)(D). As the DOH's NYS Manual states: "The NYSDOH-contracted transportation broker has no vehicles and will not provide transportation in competition with existing Medicaid-enrolled transportation vendors" such as AOT or Absolute 1. Renna Decl., Ex. 3 p. 13.

Based on all the foregoing, the second "formal control" factor weighs against finding a plausible claim of joint employment. *See, e.g., Hugee*, 2013 U.S. Dist. LEXIS 116471, *16-18 (granting motion to dismiss where, *inter alia*, "Plaintiff fail[ed] to allege that the supervision he

17

received from [the defendant] was otherwise unrelated to quality control"); *Cucul*, 2024 U.S. Dist. LEXIS 96423, *37-38 (same).

**MAS Did Not Determine Blazek's or Kendrick's Rate of Pay or Method of Payment:** The Complaint does not allege that MAS determined Blazek's or Kendrick's rate of pay or method of payment as drivers. While the Complaint alleges that "[p]roviders have no meaningful ability to negotiate compensation terms," Compl. ¶ 20 (emphasis added), the Complaint contains no allegation that MAS determined the compensation AOT or Absolute 1 paid Blazek or Kendrick for driving.[7]  Nor does the Complaint allege that MAS ever paid Blazek or Kendrick or that MAS was even authorized to do so.[8]  "When making the determination of whether a purported joint employer determined a plaintiff's rate and method of payment, the key question is whether [the employer] had the authority to sign paychecks throughout the relevant [employment] period.'" *Hugee*, 2013 U.S. Dist. LEXIS 116471, *21 (cleaned up). Thus, this third "formal control" factor also weighs against finding a plausible claim of joint employment. *See, e.g., id.* (granting motion to dismiss where, *inter alia*, "Plaintiff was not paid by [the defendant]").

**MAS Did Not Maintain Blazek's or Kendrick's Employment Records:** The Complaint does not allege that MAS maintained either Blazek's or Kendrick's employment records. Thus, this fourth "formal control" factor also weighs against finding a plausible claim of joint employment. *See, e.g., Lopez*, 2022 U.S. Dist. LEXIS 244337 at *12 (dismissing complaint where, *inter alia*, it failed to allege that the purported joint employer maintained employment records); *Cucul*, 2024 U.S. Dist. LEXIS 96423 at *30-31 (same).

---

[7] In any event, the AOT and Absolute 1 Contracts show that AOT and Absolute 1 agreed to the trip rates established by the DOH, not by MAS. Renna Decl., Ex. 1 ¶ 5, Ex. 2 ¶ 5.

[8] Indeed, MAS did not even pay AOT or Absolute 1. New York State, not MAS, paid them. Renna Decl., Ex. 1 p. 1, Ex. 2 p. 1 ("At no time will Provider bill . . . MAS for trip payment; all such payment requests shall be submitted to eMedNY.").

18

### ii. Blazek And Kendrick Fail To Plausibly Allege That MAS Exercised Functional Control Over Them

Blazek and Kendrick not only fail to plausibly allege that MAS exercised formal control over their work but also fail to plausibly plead facts showing MAS exercised functional control. This, too, warrants dismissal of their FLSA claim.

**Blazek and Kendrick Did Not Use MAS's Premises or Equipment**: The Complaint does not allege that Blazek or Kendrick used MAS's premises or equipment for their work. Instead, Blazek admits he utilized his own vehicles. Compl. ¶ 51. Thus, this first "functional control" factor weighs against finding a plausible claim of joint employment. *See, e.g., Lopez,* 2022 U.S. Dist. LEXIS 244337, *14 (granting motion to dismiss where, *inter alia*, "[t]he plaintiff ple[d] almost no facts supporting the first factor – whether [the defendant's] premises and equipment were used for the plaintiff's work") (cleaned up).

**AOT and Absolute 1 Could Each Shift As a Unit From One Putative Joint Employer to Another:** The second functional factor looks to whether an immediate employer could shift its business from one purported joint employer to another. *See Zheng*, 355 F.3d at 72. Here, the Complaint does not allege that either AOT or Absolute 1—Blazek's and Kendrick's direct employers—were unable to shift as a unit from MAS to another transportation contract. In fact, nothing in AOT's and Absolute 1's contracts with MAS prohibited them from doing so. *See* Renna Decl., Exs. 1, 2. Thus, the second "functional control" factor weighs against finding a plausible claim of joint employment. *See, e.g., Hugee*, 2013 U.S. Dist. LEXIS 116471, *24-25 (dismissing complaint where, *inter alia*, "Plaintiff d[id] not allege . . . that [his direct employer] could not shift its business to another purported joint employer."). The allegation that MAS "exercised . . . exclusive control over . . . access to Medicaid riders" (Compl. ¶¶ 42, 47) does not alter this conclusion. As the *Godlewska* court noted, "the mere fact that [the] Defendants [we]re the only

19

sources of Medicaid recipients d[id] not preclude [plaintiffs' direct employers] from contracting to serve patients other than Medicaid patients." 916 F. Supp. 2d at 263. In fact, nothing in the contracts, signed by AOT and Absolute, prevented these companies from providing other forms of transportation services – *e.g.* through a ride-sharing company such as Uber or Lyft, or through other government-funded transportation programs.

**Blazek and Kendrick Did Not Perform Piecework or Discrete Line-Jobs:** Courts have recognized that this factor "'might apply with somewhat less vigor where [] the parties are engaged in providing a service rather than manufacturing a product.'" *Hugee*, 2013 U.S. Dist. LEXIS 116471, *27 (cleaned up). Blazek and Kendrick allege they were drivers providing NEMT services. Compl. ¶¶ 40, 45. As such, the Complaint fails to allege they performed piecework or a discrete line job, and this third "functional control" factor also weighs against finding a plausible claim of joint employment. *See, e.g., Hugee*, 2013 U.S. Dist. LEXIS 116471 at *27-28 (granting motion to dismiss where, *inter alia*, "[p]laintiff was a service provider and did not perform a discrete line job").

**Blazek and Kendrick Provided NEMT Services Only to The Extent They Were Employed By AOT and Absolute 1:** "Where . . . employees work for an entity (the purported joint employer) only to the extent that their direct employer is hired by that entity, [the fourth functional control] factor does not in any way support the determination that a joint employment relationship exists." *Zheng*, 355 F.3d at 74. The Complaint does not allege that Blazek or Kendrick would continue providing NEMT services if they were not employed by AOT and Absolute 1. To the contrary, the Complaint alleges that when MAS terminated its contracts with AOT and Absolute 1, Blazek and Kendrick were restricted from performing NEMT services. Compl. ¶¶ 53, 59, 60. Thus, this fourth "functional control" factor weighs against finding a plausible claim of

20

joint employment. *See, e.g., Cucul*, 2024 U.S. Dist. LEXIS 96423, *36 (granting motion to dismiss where, *inter alia*, the complaint "allege[d] no facts suggesting that had [plaintiffs' direct employers] ceased working with [the alleged joint employers], the individual Plaintiffs would nonetheless continue their work [for those alleged joint employers]"); *Hugee*, 2013 U.S. Dist. LEXIS 116471, *28 (same).

**MAS Did Not Supervise Blazek or Kendrick:** "The fifth *Zheng* factor is essentially duplicative of the second *Carter* factor." *Lopez*, 2022 U.S. Dist. LEXIS 244337, *14 (cleaned up). Moreover, this "fifth *Zheng* factor is the most relevant factor in determining whether a purported joint employer exercises functional control over plaintiffs." *Cucul*, 2024 U.S. Dist. LEXIS 96423, *42 (cleaned up). Thus, Blazek and Kendrick's failure to plausibly plead supervision and control of their work schedules and conditions of employment sufficient to satisfy the second *Carter* factor, discussed *supra* at pp. 14-18, means they have failed to satisfy this *Zheng* factor as well, and weighs heavily in favor of MAS' motion to dismiss. *Id.*

**The Allegation that Blazek and Kendrick Performed NEMT Driving Services as Their Primary Occupation Does Not Plausibly State a Joint Employment Relationship:** Both Blazek and Kendrick allege that they performed NEMT driving services as their primary occupation. Compl. ¶¶ 41, 46. Even if this weighed in favor of joint employer status, it would be far outweighed by the remaining factors and would not be enough to state a plausible claim. *Hugee*, 2013 U.S. Dist. LEXIS 116471 at *30-31 (dismissing complaint where "all but the sixth *Zheng* factor weigh[ed] against finding that [defendant] jointly employed Plaintiff"); *see also Cucul*, 2024 U.S. Dist. LEXIS 96423 at *42-43 (dismissing complaint where only one factor weighed in favor of finding a joint employer relationship).

21

**d.    Even If Blazek Or Kendrick Had Sufficiently Alleged MAS Was Their Joint Employer, They Have Not Plausibly Alleged That They Failed To Receive Minimum Wage Or Overtime Pay In Any Given Workweek**

Even had Blazek or Kendrick sufficiently alleged that MAS was their joint employer, they would still fail to state a FLSA claim because they have not plausibly alleged they were paid below minimum wage or that they performed work that caused them to earn unpaid overtime in any specific workweek. Their FLSA claim should be dismissed for this independent reason.

The "FLSA requires only payment of minimum wages and overtime wages." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 116 (2d Cir. 2013). "[T]he FLSA is unavailing where wages do not fall below the statutory minimum and hours do not rise above the overtime threshold." *Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 201 (2d Cir. 2013) (citing *Lundy*, 711 F.3d at 115).

"[T]o state a FLSA minimum wage claim, Plaintiff must prove that, in a given week, the total amount he was paid divided by the number of hours he worked was less than $7.25 per hour[.]" *Fangrui v. GW of Flushing I, Inc.*, 17-cv-3181 (PKC), 2019 U.S. Dist. LEXIS 4092, at *13 (E.D.N.Y. Jan. 9, 2019). Neither Blazek nor Kendrick plausibly alleges they ever received less than minimum wage. Consequently, Blazek and Kendrick fail to state a claim for a minimum wage violation under the FLSA. *See Lusk v. Serve U Brands, Inc.*, 17-cv-6451 (MAT), 2018 U.S. Dist. LEXIS 22693, *6-7 (W.D.N.Y. Feb. 12, 2018) (dismissing FLSA claim for minimum wage where plaintiff "failed to provide sufficient information in their complaint for a finder of fact to be able to determine their rate of pay in any given work week").

Blazek and Kendrick also purport to make a claim for unpaid overtime. Compl. ¶¶ 44, 48, 89-90, 96-97. In that regard, the Complaint simply alleges that "Blazek and Kendrick regularly worked more than forty (40) hours per week while providing NEMT services through MAS's

22

network" and MAS failed to pay overtime for these hours. Compl. ¶¶ 89-90, 96-97. Notably missing from the Complaint are any facts about the number of overtime hours that Blazek or Kendrick claim to have worked during any week. In other words, the Complaint does not contain any facts to support the conclusory allegation that Blazek or Kendrick earned unpaid overtime. As a result, Blazek and Kendrick fail to state a plausible FLSA overtime claim.

> A plaintiff does not state a claim for unpaid FLSA overtime where she does not 'estimate her hours in any or all weeks or provide any other factual context or content,' but instead alleges only that 'she worked more than "forty hours" a week without being paid "1.5" times her rate of compensation,' as such pleadings merely 'rephrase' FLSA § 207(a)(1).

*Henao v. Parts Auth., LLC*, 19-cv-10720 (LGS), 2020 U.S. Dist. LEXIS 176829, *7 (S.D.N.Y. Sept. 25, 2020) (quoting *DeJesus v. HF Mgm't Servs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013)). Where, as here, a complaint's overtime allegations are "'devoid of any numbers to consider beyond those plucked from the statute,'" they are 'insufficient to state a claim.'" *Romero v. Metro Transp. Auth.*, 444 F. Supp. 3d 583, 587 (S.D.N.Y. 2020) (quoting *DeJesus*, 726 F.3d at 89-90).

### III.    The Court Should Decline Supplemental Jurisdiction Over Plaintiffs' State-Law Claims (Counts 2-6)

#### a.    Legal Standard

Supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), allows federal courts to decide state-law claims that are so related to the asserted federal-law claims that all claims form part of the same case or controversy. *Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 387 (1998). Claims are part of the same case or controversy when both the state-law claims and federal claims "derive from a common nucleus of operative fact." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (cleaned up). However, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "It

23

is well settled that where … the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006) (collecting cases).

### b. If Count 1 Is Dismissed And There Is No CAFA Jurisdiction Over Counts 2-4, Counts 2-6 Should Be Dismissed Pursuant To 28 U.S.C. § 1367(c)(3)

In the event Plaintiffs' FLSA claim (Count 1) – their only federal claim – is dismissed, and the Court finds no CAFA jurisdiction for Count 2, the Court should decline to exercise supplemental jurisdiction over their state-law claims (Counts 2 through 6), pursuant to 28 U.S.C. § 1367(c)(3). *See*, *e.g.*, *Valencia v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (where all federal claims have been eliminated, concerns of "judicial economy, convenience, fairness and comity point towards declining to exercise jurisdiction over the remaining state-law claims") (cleaned up). This case is in its early stages with no discovery having taken place. There would be no reason for the Court to retain jurisdiction over a case asserting only state-law claims.

Additionally, as to Count 2, federal courts in wage and hour cases routinely decline to exercise supplemental jurisdiction over plaintiffs' state-law claims when their FLSA claims are dismissed for failure to state a claim. *See, e.g.*, *Henao*, 2020 U.S. Dist. LEXIS 176829, *18-19 (dismissing FLSA claims and declining to exercise supplemental jurisdiction over plaintiffs' claims for violations of state wage and hour laws); *Donato v. Serv. Experts, LLC*, 17-cv-436 (DNH), 2018 U.S. Dist. LEXIS 167511, at *13-14 (N.D.N.Y. Sept. 28, 2018) (dismissing FLSA claims and declining to exercise supplemental jurisdiction over state law claims in the absence of "exceptional circumstances . . . warrant[ing] a different conclusion"). Because "[t]here are no exceptional circumstances present in this case that might warrant a different conclusion[,]" the

24

"continued exercise of supplemental jurisdiction" over Plaintiffs' state labor law claim (Count 2) should "be declined." *Donato*, 2018 U.S. Dist. LEXIS 167511, at *13-14.

The Court should also decline to exercise jurisdiction over Plaintiffs' state-law claims of breach of contract (Counts 3-4), promissory estoppel (Count 5), and tortious interference (Count 6). *See, e.g., Chapman v. Crane Co.*, 694 Fed. Appx. 825, 829 (2d Cir. 2017) (district court did not abuse its discretion by declining supplemental jurisdiction over state-law claims where federal claims had been abandoned, the case was at an early stage with discovery not complete and no dispositive motions having been decided, and "interests of comity militated in favor of remand because the case was predominately a matter of state law").

In short, if Plaintiffs' FLSA claim is dismissed, and there is no CAFA jurisdiction over Plaintiffs' NYLL claim, the Court should not retain jurisdiction over any of their state-law claims.

### c. If Count 1 Is Not Dismissed, The Court Should Still Decline To Exercise Supplemental Jurisdiction Over Counts 3-6

Even if Count 1 were not dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' claims of breach of contract (Counts 3-4), promissory estoppel (Count 5), and tortious interference (Count 6), because these claims are not "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Claims are found to be part of the same case or controversy "when they derive from a common nucleus of operative fact." *Hamilton Rsrv. Bank Ltd. v. Democratic Socialist Republic of Sri Lanka*, 134 F.4th 73, 79 (2d Cir. 2025) (cleaned up). "In determining whether two disputes arise from a common nucleus of operative fact, we have traditionally asked whether the facts underlying the federal and state claims substantially overlapped . . . [or] the federal claim necessarily brought the facts underlying the state claim before the court." *Id.* at 80 (cleaned up).

25

Here, the factual allegations supporting the FLSA claim and the non-labor state-law claims do not substantially overlap, and the allegations supporting the state-law claims were not brought into court by the FLSA claim. Indeed, the claims do not even involve the same alleged classes of plaintiffs. Plaintiffs' FLSA claim (Count 1) purportedly concerns MAS' alleged employment relationship with individuals hired as drivers by NEMT providers with which MAS contracts, and MAS' purported failure as their "employer" to pay minimum wage or overtime. The "operative facts," to the extent they are alleged at all, are MAS' alleged control over those drivers, the hours those drivers worked, and the compensation those drivers received over years.

Plaintiffs' state-law contract, quasi-contract and tort claims (Counts 3 through 6), by contrast, are about MAS' contractual termination of NEMT providers – *e.g.* the manner in which MAS ended the contracts, the alleged metrics manipulation, the "Arias promise," and the alleged diversion of riders. The operative facts are concentrated around March 2025 and the circumstances of the termination. The FLSA claim and these state-law claims are really two separate lawsuits and do not arise out of "the same set of events." *Treglia v. Town of Manlius*, 313 F.3d 713, 723 (2d Cir. 2002).

For these reasons, the Court should decline to exercise supplemental jurisdiction over Counts 3 through 6, even if Count 1 is not dismissed.

IV.    **In The Event They Are Not Dismissed On Jurisdictional Grounds, Plaintiffs' State-Law Labor, Quasi-Contract, and Tort Claims Should Be Dismissed For Failure To State A Claim**

a.    **Legal Standard**

The legal standard is discussed *supra* at pp. 9-10.

26

#### b. Blazek And Kendrick's NYLL Claim Should Be Dismissed for Failure to State a Claim

In the second count of the Complaint, Blazek and Kendrick assert claims under the NYLL. Compl. ¶¶ 94-99. However, as with the FLSA, "[i]n order for a defendant to be liable under the . . . NYLL . . . that defendant must have been the plaintiff's 'employer.'" *Cucul*, 2024 U.S. Dist. LEXIS 96423, *20. Moreover, "[c]ourts have interpreted the definition of 'employer' under the NYLL coextensively with the definition used by the FLSA." *Id.* at *20 n.2. Because Blazek and Kendrick have not adequately alleged that MAS was their joint employer under the FLSA, their NYLL claims must similarly be dismissed on that ground. *See, e.g. Cucul* at *43-44; *Lopez*, 2022 U.S. Dist. LEXIS 244337, *15; *Hugee*, 2013 U.S. Dist. LEXIS 116471, *32.

Further, as discussed *supra*, Blazek and Kendrick fail to plead any specifics about their hours worked or wages received in any given workweek. This, too, is fatal to their NYLL claims, just as it is to their FLSA claims. *See, e.g., DeJesus*, 726 F.3d at 89 (affirming dismissal of FLSA and NYLL claims where "complaint tracked the statutory language . . . lifting its numbers and rehashing its formulation").

#### c. The Court Should Dismiss Plaintiffs' Claim Alleging Breach of the Implied Covenant Of Good Faith And Fair Dealing

Plaintiffs' claim of breach of the implied covenant of good faith and fair dealing should be dismissed as duplicative of the breach of contract cause of action. Courts in the Second Circuit, applying New York law, have consistently dismissed claims for breach of the implied covenant of good faith and fair dealing as duplicative of breach of contract claims when both claims arise from the same facts and seek identical damages. *See, e.g., Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, 736 Fed. Appx. 274, 278-279 (2d Cir. 2018).

27

Plaintiffs' own allegations confirm this duplication. For their breach of contract claim (which MAS does not seek to dismiss for failure to state a claim), Plaintiffs assert that MAS breached the provider contracts by, among other things: "assigning trips that providers could not reasonably accommodate based on their TPP [Transportation Provider Profile] and known availability"; "failing to provide thirty (30) days' notice and a ten (10) day cure opportunity for any alleged material breach under Section 43.2"; "failing to request a corrective action plan or use intermediate steps for performance issues under Section 45"; and "failing to honor the appeal process and meeting requirement under Section 47." Compl. ¶ 103. For damages on the breach of contract claim, Plaintiffs seek "loss of current and future business, lost profits, and destruction of provider business value." *Id.* ¶ 105.

Plaintiff then repackages the same alleged conduct as an implied covenant claim, alleging: "manipulating its scheduling and roster systems in a way that ensured providers would incur excessive reassignment metrics simply by complying with the contract and the law," and "using those inflated metrics as a pretext to terminate providers and divert riders to other vendors"; and "refusing to engage in good-faith appeals or corrective processes and instead rubber-stamping termination decisions." Compl. ¶ 108. For this claim, Plaintiff seeks damages including "lost profits, lost business value, and consequential damages." *Id.* ¶ 110. Accordingly, in both causes of action, Plaintiffs attack the methods by which MAS assigned trips and MAS' alleged failure to engage in the appeals and corrective processes outlined in the provider contracts, and seek lost profits, and lost business value as damages. These allegations confirm that both claims arise from the same nucleus of facts and seek the same types of damages, which is impermissible and requires the dismissal of the implied covenant of good faith and fair dealing cause of action. *See Cruz v. Fxdirectdealer*, LLC, 720 F.3d 115, 125 (2d Cir. 2013).

For these reasons, Plaintiff's implied covenant claim should be dismissed.

### d.  The Court Should Dismiss Plaintiffs' Claim Alleging Promissory Estoppel

Plaintiffs Blazek and AOT's claim of promissory estoppel should be dismissed for failure to state a claim. "A cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000). "A promise that is too vague or too indefinite is not actionable under a theory of promissory estoppel." *Lamda Sols. Corp. v. HSBC Bank USA, N.A.*, 574 F. Supp. 3d 205, 215 (S.D.N.Y. 2021) (cleaned up).

Plaintiffs allege that at some unspecified point in time, an MAS employee named "Arias" "expressly assured Blazek in writing that 'reassignment rates are not punitive,' or words to that effect." Compl. ¶ 50. The Complaint alleges that relying on that assurance, Blazek purchased a second vehicle for approximately $30,000 in order to expand his NEMT business. Compl. ¶ 51. He also "continu[ed] to operate within MAS's system." *Id.* ¶ 114. Then, MAS used the reassignment rate to justify AOT's termination. *Id.* ¶¶ 52, 115. Blazek's reliance resulted in "loss of business and wasted investment." *Id.* ¶ 116.

This claim fails as a matter of law for three reasons. First, a promissory estoppel claim is precluded by the provider contract that Blazek signed as AOT's owner. "The existence of a valid and enforceable contract governing a particular subject matter precludes recovery under a promissory estoppel cause of action arising out of the same subject matter." *Bennett v. State Farm Fire & Cas. Co.*, 181 A.D.3d 777, 778-779 (2d Dep't 2020). "Courts frequently apply this limiting principle to foreclose recovery on a promissory estoppel theory." *See*, *e.g.*, *That's What She Said, Inc. v. Gutter Games Ltd.*, 22-cv4230 (KPF), 2024 U.S. Dist. LEXIS 138014, *25-27 (S.D.N.Y.

29

Aug. 5, 2024); *see also Paxi, LLC v. Shiseido Ams. Corp.*, 636 F. Supp. 2d 275, 287 (S.D.N.Y. 2009) (describing promissory estoppel as "a narrow doctrine which generally only applies where there is no written contract, or where the parties' written contract is unenforceable for some reason").

Here, Plaintiffs are claiming that an MAS employee once told them that "reassignment rates are not punitive," but the provider contract allows MAS to terminate without cause (upon 90 days' notice), *see* Renna Decl., Ex. 1, ¶ 43.1, and to immediately terminate "if Provider fails to perform the services in a timely or satisfactory manner and in accordance with the service, quality and performance standards and requirements of this Contract or in compliance with the NYS or MAS Manuals." *Id.* ¶ 43.3. This contractual language, and not an alleged one-time remark by an MAS employee, controls; a claim of promissory estoppel is therefore precluded as a matter of law.

Second, there was no "clear and unambiguous" promise. Plaintiffs allege that "Arias" told Blazek, "'reassignment rates are not punitive,' or words to that effect." Compl. ¶ 50. (The qualifier "or words to that effect" is a bizarre one given the allegation that "Arias'" statement was allegedly written. Plaintiffs should be able to quote the statement verbatim without resort to a qualifier.) As alleged, there was no promise – the employee did not assure Blazek that MAS would or would not do a particular thing, or that a particular thing would or would not happen. Even if the statement were a promise, it was not clear and unambiguous. One MAS employee informing Blazek, on one occasion, that reassignment rates are not punitive (or "words to that effect"), does not constitute a promise that MAS will take or forebear from taking any action against his company. The statement has no clear meaning. Courts have found much clearer and concrete statements to fall short of being the kind of clear and unambiguous statement to which promissory estoppel could attach. *See*, *e.g.*, *That's What She Said, Inc.*, 2024 U.S. Dist. LEXIS 138014, *30 ("That [defendant] made

'assurances' that the Sales Targets would not be 'used against [Plaintiff],' and that 'the numbers didn't matter as long as [Plaintiff was] continuing to do a good job' – though suggestive of an effort to countenance Plaintiff's lackluster performance – cannot be construed as 'clear and unambiguous' promises not to use the Sales Targets as a basis for terminating the License Agreement"); *Media Sport & Arts S.r.l. v. Kinney Shoe Corp.*, 95-cv-3901, 1997 U.S. Dist. LEXIS 12394, *47-48 (S.D.N.Y. Aug. 20, 1997) (finding statements that "[a party] may proceed to act on the enclosed offer without limitation" and "[the parties] are going to make a great team" were not clear and unambiguous promises). "Reassignment rates are not punitive," or "words to that effect," are not a promise of any kind, and certainly not a clear and unambiguous one.

Finally, even if the alleged utterance "reassignment rates are not punitive" were a clear and unambiguous promise, Blazek and AOT could not have reasonably relied on it. This was a one-off statement made by an MAS "field liaison." Blazek could not have reasonably believed it to be a reflection of MAS policy, particularly when the provider agreement contains numerous termination provisions, including one that allows MAS to terminate the contract if AOT "fails to perform the services in a timely or satisfactory manner." Renna Decl., Ex. 1, ¶ 43.3. It is therefore unreasonable to invest $30,000 in a second vehicle based on such an informal assurance. *See*, *e.g.*, *Steinbeck v. Steinbeck Heritage Found.*, 400 Fed. Appx. 572, 577-578 (2d Cir. 2010) (plaintiff could not have reasonably relied on defendant's oral promise that he could market all rights in a travelogue, because such a promise contradicted a contract that could be modified only in writing); *Delmaestro v Marlin*, 168 A.D.3d 813, 816 (2d Dep't 2019) ("under the circumstances of this case, it was unreasonable, as a matter of law, for the plaintiff to purportedly spend $87,666 on appliances, fixtures, and furniture for the property in reliance upon an alleged promise without an executed agreement" to buy the property). Also, the phrase "reassignment rates are not punitive"

31

– even taking it at face value – does not translate into a green light to make a major capital investment. At most it might reasonably induce someone to continue operating as before, not to significantly expand their business; reliance was not only unreasonable but disproportionate to the promise.

For these reasons, Plaintiffs' promissory estoppel claim should be dismissed.

### e. The Court Should Dismiss Plaintiffs' Claim Alleging Tortious Interference With Business Relations/Prospective Economic Advantage

Plaintiffs' tortious interference claim should be dismissed for failure to state a claim. Plaintiffs must plead that: "(a) [each] plaintiff had business relations with a third party; (b) the defendant interfered with those business relations; (c) the defendant acted with the sole purpose of harming [each] plaintiff or by using unlawful means; and (d) there was resulting injury to the business relationship." *Thome v. Alexander & Louisa Calder Found.*, 70 A.D.3d 88, 108 (1st Dep't 2009).

Plaintiffs allege that they had ongoing relationships with Medicaid enrollees who used their transportation services. Compl. ¶¶ 119-120. Plaintiffs charge that MAS interfered with these relationships by "(a) designing and operating a scheduling and metrics system that ensured Plaintiffs would accumulate inflated reassignment rates when they complied with safety and legal requirements; (b) using those inflated metrics as a pretext to terminate Plaintiffs; and (c) reallocating Plaintiffs' riders and established customer base to other transportation companies for MAS's benefit." *Id.* ¶ 122. Plaintiffs allege that MAS "acted with malice and improper motive" including a desire to terminate small transportation providers from the network in favor of larger ones. *Id.* ¶ 123.

Plaintiffs' claim should be dismissed for four reasons. First, it should be dismissed as duplicative of the breach of contract claim (Count 3). *See*, *e.g.*, *Saulsbury v Durfee*, 201 AD3d

32

1318, 1323 (4th Dep't 2022) (dismissing a tortious interference with business relations counterclaim as duplicative of the breach of contract claim where the two were "predicated on the same conduct purportedly prohibited by the contract").

Second, the tortious interference claim is impermissibly based on sweeping generalizations and vague assertions. Plaintiffs do not sufficiently allege how MAS sought to favor larger transportation providers over smaller ones, *see* Compl. ¶¶ 1-2, 31, or how MAS' scheduling and metrics systems were used as a pretext to terminate Plaintiffs, *see Id.* ¶¶ 2, 34, 38, or which enrollees they expected to receive repeat business from, *see Id.* ¶¶ 119-121. In the absence of specific factual allegations supporting a cause of action for tortious interference, the claim must be dismissed. *See, e.g.*, *Camelot Si, LLC v. ThreeSixty Brands Grp. LLC*, 632 F. Supp. 3d 471, 483 (S.D.N.Y. 2022) (notwithstanding spending "'some 20 paragraphs' describing its relationships," plaintiff's tortious interference claim was dismissed because "it nonetheless fails to identify any concrete relationship with a particular consumer").

Third, Plaintiffs' tortious interference claim is legally deficient even when their conclusory pleading is accepted as true. Plaintiffs appear to be alleging that MAS interfered with their relationships with their customer base – Medicaid enrollees in need of transportation services but in no way obligated to use Plaintiffs as their transportation providers; in fact, MAS has the discretion in terms of which enrollees to assign to which providers. *See* Compl. ¶ 121. Plaintiffs must show that MAS's conduct was criminal or independently tortious. *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004) ("Conduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently 'culpable' to create liability for interference with prospective contracts or other nonbinding economic relations"). Here, there is no allegation that MAS' conduct was criminal or independently tortious, and no assertion that "the defendant acted with the sole purpose of harming

33

the plaintiff or by using unlawful means." *Thome,* 70 A.D.3d at 108. The Complaint alleges that MAS sought to give preference to large transportation providers, but this is neither criminal nor independently tortious nor malicious; and it means that MAS' sole purpose could not have been to harm the Plaintiffs. *See Camelot Si, LLC,* 632 F. Supp. 3d at 484 (dismissing claim where plaintiff did not allege that defendant acted solely out of malice; "economic self-interest is at least a reason for Defendants' behavior"); *Carvel Corp.*, 3 N.Y.3d at 190 ("It is undisputed that Carvel's motive in interfering with the franchisees' relationships with their customers was normal economic self-interest; Carvel wanted to reverse a period of business declines and make itself more profitable. It was not acting solely to hurt the franchisees"). To be clear, MAS disputes that it favored any larger transportation provider over a smaller one; but even if it had, such favoring would not give rise to the asserted claim. The Complaint also alleges that MAS' system set up Plaintiffs for failure, but this is the same allegation undergirding the contract claim and, therefore, cannot possibly be criminal or independently tortious. *See Plasticware v. Flint Hills Res*., 852 F. Supp. 2d 398, 403 (S.D.N.Y. 2012) (allegation of breach of contract deemed insufficient).

Finally, Plaintiffs' claim fails as a matter of law because it focuses exclusively on MAS' alleged actions vis-à-vis transportation providers such as the Plaintiffs, as opposed to MAS' conduct toward Medicaid enrollees – which is where tortious interference, if it existed, would be found. *See Carvel Corp.*, 3 N.Y.3d at 192 ("conduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship"); *Plasticware*, 852 F. Supp. 2d at 403 ("Plaintiff only alleges conduct directed at itself, not any conduct Defendant directed at Plaintiff's customers or other businesses. This is also fatal to Plaintiff's cause of action here"). Plaintiffs fail

to allege any illicit or tortious conduct aimed at Plaintiffs' customers, and therefore fail to state a tortious interference cause of action. *See generally Thome*, 70 A.D.3d at 108.

For these reasons, Plaintiffs' tortious interference claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant MAS respectfully requests that the Court dismiss the Complaint in its entirety. Count 1, which contains the only federal claim, should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Counts 2-6, which all purportedly arise under state law, should each be dismissed for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1), or, in the alternative, Counts 2 and 4-6 should be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).

Dated: June 3, 2026                              BOND, SCHOENECK & KING, PLLC

By:_____
       Louis Orbach
       Michael Barnett
       Natalie Vogel
       *Attorneys for Defendants*
22 Corporate Woods Blvd., Suite 501
Albany, New York  12211
Telephone:  (518) 533-3000
Email: lorbach@bsk.com, mbarnett@bsk.com, nvogel@bsk.com

35